(173 App. Div. 164)

PEOPLE ex rel. TOWN OF SCARSDALE v. PUBLIC SERVICE COMMISSION, SECOND DIST., et al.

(Supreme Court, Appellate Division, Third Department.  May 3, 1916.)

1. RAILROADS ☞94(1)—CONSTRUCTION—GRADE CROSSINGS.
    Where a grade crossing entirely within a town is eliminated by a new overhead crossing some distance therefrom, an approach to which is in another town, a proportion of the cost of the improvement is payable by the second town, under Railroad Law (Consol. Laws, c. 49) § 94, providing for the expenses of such crossings.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266, 271; Dec. Dig. ☞94(1).]

2. STATUTES ☞188—CONSTRUCTION—WORDS.
    A singular noun in a statute, when necessary, may be interpreted as plural.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. ☞188.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** RAILROADS ☞9(1)—CONSTRUCTION—GRADE CROSSINGS.

Railroad Law, §§ 91–96, contemplate that the Public Service Commission is the controlling and determining factor in all matters relating to a change of grade, and intend to give it full power in the premises.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–16; Dec. Dig. ☞9(1).]

**4.** RAILROADS ☞97—CONSTRUCTION—GRADE CROSSINGS.

Under Railroad Law, §§ 91–96, providing for the elimination of grade crossings and apportioning the expenses therefor, the Public Service Commission has jurisdiction to determine the proper apportionment of such expenses between two towns, where a substituted overhead crossing lies partly in both towns.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 297–304; Dec. Dig. ☞97.]

**5.** RAILROADS ☞97—CONSTRUCTION—GRADE CROSSINGS.

Under Railroad Law, §§ 91–96, the accounting and settlement for the cost of a substituted overhead crossing by railroad companies and municipalities liable are not voluntary acts on their part, but may be compelled by the Commission.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 297–304; Dec. Dig. ☞97.]

Certiorari by the People of the State of New York, on the relation of the Town of Scarsdale, to review action by the Public Service Commission for the Second District and others. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Wm. Cravath White, of New York City, for relator.
Ledyard P. Hale, of Albany, for the Commission.
Frank D. Briggs, of Tarrytown, for town of Greenburgh.

JOHN M. KELLOGG, P. J. A grade crossing over the railroad tracks at Hartsdale avenue, situated entirely in the town of Greenburgh, was by order of the Public Service Commission entirely eliminated, and a new overhead crossing established some distance from it. The part of the new crossing going over the railroad track is entirely in the town of Greenburgh, but in order to make the crossing available for the highway in the town of Scarsdale it was necessary to build in that town a ramp or approach to the crossing. The propriety of the elimination of the old crossing, and the establishment of the new crossing with its approaches, is conceded. After the work was finished by the railroad company, under the charge and supervision of the Public Service Commission, the railroad company presented its account to the town of Greenburg. The town raised no question about the expenditures, but by its petition to the Public Service Commission raised the question that the town of Scarsdale ought to pay one-quarter of the expense of building the ramp or approach to the crossing situated in that town. The two towns thereupon appeared before the Commission and filed a stipulation, conceding the facts and giving the assessed valuation of the two towns. The stipulation concludes:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Index

"That in case the Public Service Commission shall find as matter of law that the town of Scarsdale is liable for some part of the cost of eliminating the said Hartsdale avenue crossing, the exact amount thereof shall be stated by the Public Service Commission after notice to the undersigned as attorneys for the said town of Greenburgh and town of Scarsdale."

The stipulation recited that it was made for the purpose of facilitating the presentation and determination of the question of the legal obligation of the town of Scarsdale to pay any portion of the expense. Upon that stipulation the Commission determined that the town of Scarsdale is liable and shall be charged with one-quarter of the cost of the structure and work within the limits of that town, and the town of Greenburgh for one-quarter of the cost of the structure within that town.

The relator, by this certiorari, seeks a review of that decision upon two grounds: (1) That as matter of law the town of Scarsdale is not liable to pay any part of the expense, because the road crossing to be eliminated was wholly in the town of Greenburgh, and that the new crossing, aside from the ramp, is entirely in that town; and also (2) that the Public Service Commission had no jurisdiction to determine the question. All parties interested ask a decision of the legal liability at this time, and expressly waive the question whether a review can be had otherwise than by appeal.

[1] The railroad company, in its petition for the change of grade, assumed that the old crossing was in the town of Scarsdale, and that town was made a party to the proceeding; but later, by an amendment, the town of Greenburgh was made a party, so that both towns appeared before the Commission and were parties to the proceeding. The record of the hearing upon that petition shows that the relator objected to paying one-half of the expense chargeable to the municipality, as two-thirds or more of the improvement was in the town of Greenburgh, and suggested that but one-third of the amount should be charged to it. It also urged that the grade of the ramp should be 8 per cent. rather than 7 per cent. as planned. The Commission adopted this last suggestion, thereby increasing the expense of the ramp.

The order for the elimination of the grade crossing was made by the Commission July 25, 1910. Section 94 of the Railroad Law (Laws 1910, c. 481 [Consol. Laws, c. 49]) then in force, which provided for the manner in which the expense of such a crossing should be met, reads in part:

"Whenever under the provisions of section 90 of this chapter a new street, avenue or highway is constructed across an existing railroad, the railroad corporation shall pay one-half and the municipal corporation wherein such street, avenue or highway is located, shall pay the remaining one-half of the expense of making such crossing above or below grade; and whenever a change is made as to an existing crossing in accordance with the provisions of section 91 of this chapter, fifty per centum of the expense thereof shall be borne by the railroad corporation, twenty-five per centum by the municipal corporation, and twenty-five per centum by the state."

[2] This provision is substantially re-enacted in the amendment of the section made by chapter 354, Laws of 1913, and by chapter 744 of that year, except in the latter statute we find the words "the munici-

pal corporation having jurisdiction over such street, avenue, highway or road" in place of the words "municipal corporation wherein such street, avenue or highway is located." The ramp in the town of Scarsdale must be within the jurisdiction of that town, and is clearly located in that town. It is evidently a part of the crossing. The petitioner, the railroad company, could not maintain before the Commission that the crossing could be constructed without building the ramp into the town of Scarsdale to give the highway in that town access to the crossing. A part of the crossing is therefore clearly within that town, and forms a part of the highways of that town, and the town should build and maintain its highways. But this part of its highways, being a part of the railroad crossing, was by the statute built under the direction and control of the Public Service Commission. If to eliminate the grade crossing it had been necessary to put the new crossing on the town line, or entirely in the town of Scarsdale, that town could not claim exemption. The singular noun in a statute, when necessary, may be interpreted as plural, and the word "municipality" in this statute, under the circumstances, may be read "municipalities," or "municipality or municipalities."

The relator, after having stipulated that the Commission may decide the question of law as to its liability, is hardly in a position to ask a review by certiorari of that determination upon a jurisdictional question. It took the chance of a favorable decision, and we should not now give a willing ear to its complaint that the Commission had no jurisdiction to decide the question so submitted. It might well be left to question the jurisdiction of the Commission elsewhere; but as we are satisfied the question was properly submitted, and the Commission had jurisdiction, we may state the reasons for such conclusion.

[3-5] Sections 91 to 96 of the Railroad Law contemplate that the Public Service Commission is the controlling and the determining factor in all matters relating to a change of grade, and the statute evidently intended to give it full power in the premises. A consideration of section 94 shows that the power of the Commission is not spent until the entire expense of the change is determined and apportioned between the respective parties. It provides that, if two railroad companies are interested in the crossing, the 50 per cent. to be paid by the railroad corporation or corporations affected thereby shall be paid by the corporations in the proportion required by the Commission. The work is to be done and paid for by the railroad company in the first instance; the land is to be purchased by the town in the first instance; the plans and the specifications and the estimate of the cost are to be approved by the Commission. If the railroad company does the work by contract, the proposals shall be submitted to the Commission, and if it determines the bids are excessive it has the power to require the submission of new proposals. It may employ temporarily experts and engineers to supervise the work, the expense of whom is to be paid by the comptroller upon the certificate of the Commission," said expense to be included in the cost of the particular change in grade on account of which it is incurred and finally apportioned in the manner provided in this section. Upon the completion of the work and

its approval by the Commission, an accounting shall be had between the railroad corporation and the municipal corporation, or the state commission of highways, of the amounts expended by each, with interest, and if it shall appear that the railroad corporation, or the municipal corporation, or the state commission of highways, has expended more than its proportion of the expense of the crossing as herein provided, a settlement shall be forthwith made in accordance with the provisions of this section." The accounts are to be verified, and in case of a dispute between the railroad corporation, the municipal corporation (or the state commission of highways as to a state or county road) "as to the amount expended," a judge of the Supreme Court may appoint a referee to take testimony as to the amount expended, and the confirmation of that report shall be final. If the railroad company refuses to pay its proportion of the expense, the same, with interest from the date of such accounting, may be levied and assessed upon the railroad corporation, and be collected in the same manner that taxes and assessments are collected, and if the municipal corporation fails to pay its proportion of the expense, suits may be instituted by the railroad corporation for the collection of it, with interest from the date of the accounting, and the railroad corporation may offset the account, with interest, against taxes. The state's proportion of the expense is to be paid by the state treasurer on the warrant of the comptroller, to which is appended a certificate of the Public Service Commission that the work has been properly performed, the situation of the crossing that has been changed, the total cost and proportionate expense thereof, and the money shall be paid in whole or in part to the railroad corporation or to the municipal corporation as the Public Service Commission may direct, subject to the rights of the respective parties as they appear from the accounting to be had as before provided. The section then provides that no claim for damages to property on account of the change or abolishment of any crossing shall be allowed unless notice shall be filed with the Public Service Commission within six months after the completion of the change.

In construing this last paragraph the Court of Appeals has held that the service of such notice is a condition precedent to any action for damages on account of a change of grade so made. We quote from the opinion:

"The necessity for a statute limiting the time within which a claim can be made for such damages arises from the fact that after the completion of the work an accounting is had between the municipality and the railroad company, to be approved by the Board of Railroad Commissioners, and a settlement is then had between said municipality and the railroad corporation and the state, based upon said accounting. Without some special statutory provision limiting the time within which a claim for damages can be asserted, the accounting and settlement might be had without knowledge of alleged claims." Matter of Melenbacker v. Village of Salamanca, 188 N. Y. 370, 377, 80 N. E. 1090, 1092.

The opinion states that the accounting is to be approved by the Board of Railroad Commissioners. The statute does not in words say so, but evidently the accounting contemplated is more than an agreement between the officials of the railroad company and the town

as to the amounts paid by them respectively. They alone cannot make the accounting, the settlement, the apportionment; they do not know what the state has paid, and the state can only pay its share of the apportionment by direction of the Commission. If two railroad corporations are interested in the crossing, the Commission apportions between them the 50 per cent. to be paid by them. The accounting and the settlement mentioned in the statute is a liquidation of the accounts by the Commission, which becomes binding upon the parties. If it was only between the railroad company and the municipality, the state would not be bound by it, and the settlement and accounting would be of no force. The statute contemplates a settlement binding upon all the parties liable to pay any part of the expense. If the municipality finds the account rendered by the railroad company agreeable to it, but it is not satisfactory to the state, the provisions as to a reference do not apply. There is no provision for settling the matter between the state, the railroad company, and the municipality, unless the Commission has that power. The referee appointed can only determine the disputed expenses made by the company or municipality; he cannot determine what the state has paid. There is no provision in the act for a settlement or apportionment of the expenses by any authoritative body between all the parties, unless the Commission is to make the settlement and apportionment. If the accounting and the settlement is entirely voluntary upon the part both of the municipality and the company, and they do not make it, then the statute has provided no way for the payment of the expenses. The statute assumes that it has provided a method which necessarily results in a settlement and liquidation of the expenditures.

The statute only provides for compelling payment of the amount found due on the accounting, with interest. The provision for collecting from the railroad company its share of the expense as a tax, or that the railroad company can offset the amount due from the town against its taxes, only have force after the settlement. Manifestly neither party can avoid payment by refusing to enter upon the accounting and settlement. The accounting and settlement are not therefore voluntary acts upon their part, but may be compelled by the Commission, which may fix the amount of the expenditures and apportion it in the manner required by the statute. The Court of Appeals, in Matter of Erie Railroad Company, 208 N. Y. 486, 102 N. E. 562, evidently construe the statute as charging upon the Commission the power to apportion between the parties the expense in the manner contemplated by the statute, and reversed the apportionmnt made, sending the matter back to the Commission to make a new apportionment along the lines determined.

We conclude that the town of Scarsdale was properly charged by the Commission with the payment of the amount stated in the order appealed from. The decision is therefore affirmed, with $50 costs and disbursements. All concur.