[S. F. No. 7961. In Bank.—June 4, 1917.]

CITY OF SAN JOSE (a Municipal Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA and SOUTHERN PACIFIC COMPANY, Respondents.

PUBLIC UTILITY—RAILROAD CROSSING CITY STREET—APPORTIONMENT OF COST ON MUNICIPALITY—POWER OF RAILROAD COMMISSION.—A municipal corporation which has transferred to the Railroad Commission the city's control over public utilities in accordance with the provisions of section 23 of article XII of the Constitution, may be required by the commission, in the exercise of the authority conferred on it by section 43 of the Public Utilities Act, to pay a proportion of the cost of constructing a crossing, with a separation of grades, of a city street by a railroad.

ID.—REGULATION OF RAILROADS—CONTROL OF CROSSINGS.—The control of the manner of constructing railroad crossings is a vital and material part of the regulation of railroads and is germane to that subject, within the purview of sections 22 and 23 of article XII of the Constitution.

ID.—JURISDICTION OF COMMISSION OVER MUNICIPALITY—APPEARANCE.— The omission of the Public Utilities Act to provide definite process to bring a municipality before the commission at a hearing on the necessity for a safe crossing is not fatal to the acquirement of jurisdiction over the municipality by the commission. The appearance of the city, in pursuance of notice of the hearing given in accordance with the rules of practice adopted by the commission under section 53 of the Public Utilities Act, was sufficient to bind it by the award of the commission.

ID.—ACQUISITION OF MUNICIPAL FRANCHISE.—The commission, in granting authority to a railroad company to cross certain streets in a city, prior to the acquisition by the company of a franchise from the municipality for such crossing, did not act in excess of its jurisdiction.

APPLICATION for a Writ of Certiorari to review an order of the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

Earl Lamb, for Petitioner.

Henley C. Booth, and George D. Squires, for Respondent Southern Pacific Company.

Douglas Brookman, for Respondent Railroad Commission.

MELVIN, J.—*Certiorari* to review the order of the Railroad Commission in the matter of the Southern Pacific Company's application for permission to construct and maintain certain crossings in the city of San Jose. The Southern Pacific Company proposed to cross thirty-five streets and highways intersecting its contemplated route which it intends to construct for the greater part on its private right of way. The order of the Railroad Commission grants the railroad corporation permission to cross thirty-four of the streets and highways at grade. Regarding the thirty-fifth crossing at West Santa Clara Street commonly known as "The Alameda," an order was made that the Southern Pacific Company might have permission to construct its tracks only upon condition that there should be a separation of grades. The city of San Jose seems to concede that if a crossing is proper at this point, the grades should be separated, but vigorous attack is made upon that part of the decision of the Railroad Commission which is as follows:

"The expense of caring for its tracks during the course of construction and laying its tracks in the subway after its completion, together with all expenses incident thereto, shall be borne by San Jose Railroads. All other expense except that in connection with the track work of the Southern Pacific Company, shall be borne fifty (50) per cent by Southern Pacific Company, thirty-five (35) per cent by City of San Jose and fifteen (15) per cent by Santa Clara County or the State Highway Commission, as the legal rights in the premises of the two latter parties may hereafter appear."

This order is attacked upon the grounds (1) that the Railroad Commission exceeded its authority and jurisdiction in determining that the city of San Jose should bear a proportion of the cost of this crossing, and (2) that the order is unlawful because it does not require as a prerequisite to the granting of the permission to cross "The Alameda," that the railway corporation should obtain a franchise from the city of San Jose.

In accordance with the provisions of section 23 of article XII of the Constitution and by the procedure furnished by the act of 1911 (Stats. Ex. Sess. 1911, p. 168), San Jose has elected to transfer and has passed to the Railroad Commission the city's control over public utilities. Therefore, as counsel for the Railroad Commission reminds us, this proceeding does not present the issue of a conflict between state and municipal powers by which we were confronted in *City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 323, [159 Pac. 1169]. In his concurring opinion in that case, Mr. Justice Henshaw said: "Touching a public utility operating wholly within the corporate limits of a municipality, no reason can be perceived why its regulation and control might not, with propriety, be intrusted to the municipal authorities; but the condition is very different where the operations of the utility extend beyond the boundaries of a city and where its services are rendered to several, or to many other communities and cities. In such cases it is manifest that the welfare of all concerned (of the utility, of the public, and of the state) is best conserved by placing the whole control under a single board or commission (in this state, the Railroad Commission) empowered to adjust all questions which may arise, in the light of all interests entitled to consideration."

We have here, therefore, a surrender by the city of San Jose, under the Constitution and the appropriate statute of the control over public utilities which was formerly exercised by that municipality. In the exercise of that authority, so conferred, the commission finds ample warrant for its order in section 43 of the Public Utilities Act, "(a) No public road, highway or street shall hereafter be constructed across the track of any railroad corporation at grade, nor shall the track of any railroad corporation be constructed across a public road, highway or street at grade, nor shall the track of any railroad corporation be constructed across the track of any other railroad or street railroad corporation at grade, nor shall the track of a street railroad corporation be constructed across the track of a railroad corporation at grade, without having first secured the permission of the commission; provided, that this subsection shall not apply to the replacement of lawfully existing tracks. The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"(b)" The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use and protection of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of each crossing of a public road or . highway by a railroad or street railroad and of a street by a railroad or *vice versa,* subject to the provisions of section 2694 of the Political Code, so far as applicable, and to alter or abolish any such crossing, and to require where, in its judgment, it would be practicable, a separation of grades at any such crossing heretofore or hereafter established and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the state, county, municipality or other public authority in interest."

But petitioner contends that this provision is unconstitutional, in that it gives to the Railroad Commission power to impose upon the city of San Jose an obligation to pay money from its treasury. It is argued that section 13 of article XI, which prohibits the legislature from delegating to any com-

mission power to interfere in any way with any municipal improvement, money or property, is a distinct limitation upon the legislature which prohibits it from allowing the Railroad Commission to appropriate, in effect, money from the treasury of the City of San Jose.   Section 6 of the same article is invoked as an inhibition against state control of municipal affairs.   To the latter objection the obvious answer is that the people of the city by solemn and orderly election have surrendered their right to control in this sort of municipal affairs.   That right has not been taken away by the legislature, but by legislative permission has been vested by the people of San Jose in the Railroad Commission.   Having thus abdicated their police powers with respect to the regulation of public utilities, the people of that city have lost such protection as might, under other circumstances, be afforded by the parts of the Constitution cited in their behalf, because sections 22 and 23 of article XII, by their plenary provisions, exclude all considerations of other parts of the Constitution, if any there be, conflicting with or contradictory to the Public Utilities Act, if only the matters of which that statute treats are cognate and germane to the subject of regulation of public utilities.   (*Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119].)   In the opinion in that case, which was prepared by Mr. Justice Henshaw, the following language was used at page 658 [of 166 Cal.] : "We regard the conclusion as irresistible that the Constitution of this state has in unmistakable language created a commission having control of the public utilities of the state, and has authorized the legislature to confer upon that commission such powers as it may see fit, even to the destruction of the safeguards, privileges, and immunities guaranteed by the Constitution to all other kinds of property and its owners."

Upon the same subject, Mr. Justice Sloss, delivering the concurring opinion, said (166 Cal. 702) : "If the Railroad Commission has acted in conformity with the powers granted to it by the legislature, the validity of its order cannot be questioned in this court or elsewhere under a claim of violation of any provision of the state Constitution other than the provisions relating to the Railroad Commission.   This statement is, however, to be taken subject to the qualification that the powers conferred by the legislature on the Railroad Commission must

be such as are cognate and germane to the purposes for which the Railroad Commission was created, i. e., the regulation and control of public utilities.''

That the control of the manner of constructing railroad crossings is a vital and material part of the regulation of railroads and is germane to that subject is too evident to need supporting argument. The right of apportionment of the cost by the commission to the parties benefited by the crossing is a proper element of this cognate power. That a city receives benefit from a safety device such as that here contemplated may not be doubted. In *Town of Polk* v. *Railroad Commission*, 154 Wis. 523, [143 N. W. 191], the court was considering a question very like the one presented to us here. The Railroad Commission had made an order for the construction of an overhead crossing to span the tracks of a railroad. By the order the town was required to bear ten per cent of the cost of construction. This part of the order was attacked by the town on the ground that the duty of making crossings of highways safe rested upon the railroad corporation. The attack was unsuccessful, the court holding that "the legislature in the exercise of its police power had a perfect right to enact the law," and, further, that it was "neither inequitable nor illegal to require the owners of the three public highways involved to contribute to the expense of the overhead crossing."

In a later case—*Milwaukee* v. *Railroad Commission*, 162 Wis. 127, [155 N. W. 948]—the city of Milwaukee sought to have vacated and declared of no force an order of the Railroad Commission apportioning to the municipality a certain percentage of the cost of establishing separation of grades at designated crossings. The order was upheld, and in the opinion written by Mr. Chief Justice Winslow we find an answer to the argument advanced by the representative of San Jose in this proceeding that the railroad company creates the dangerous condition at street crossings and that it should, therefore, bear the entire expense of removing the peril to the users of the highways by the establishment of separated grades. We quote from the opinion as follows:

''The law seems to be the fruit of an honest and enlightened attempt on the part of the legislature to deal equitably and fairly with a great municipal problem.

''Milwaukee has during the last half century become a great and prosperous city. Its greatness and prosperity have come

because of its commerce, and its commerce has come largely because of its railroads. Without them Milwaukee as we know it to-day would not exist. The growth of the city and of the railroads has been coincident, interdependent, inseparable, and from this growth has arisen the great danger of the grade crossing. Why should not the expense of removing that danger be equitably shared by the different agencies whose joint growth has brought it about?''

The court of appeals of New York took occasion to express similar views. *In re Erie R. R. Co.*, 208 N. Y. 486, [102 N. E. 562], was a proceeding in which the court was reviewing the action of the Public Service Commission in making an order which failed to recognize that part of the statute by which the commission was directed to apportion the cost of crossings not at grade between the railroad, the municipality, and the state. Upon this matter the court spoke, in part, as follows: ''We see no reason why equitably and properly the expense of a construction for avoiding a grade crossing by a new track, which is necessarily connected with and results in the elimination of an existing grade crossing should not be divided between the two purposes thus accomplished, and properly apportioned so far as the latter feature is concerned.'' (See, also, *People ex rel. Town of Scarsdale* v. *Public Service Commission*, 173 App. Div. 164, [159 N. Y. Supp. 48].)

Petitioner insists that as the statute does not in terms provide for service of process or notice of any sort upon the city or that the city's rights be examined at any hearing, the Railroad Commission might well take the property of the municipal corporation without due or any process of law. It is said that the statutory omission deprives the commission of the power to acquire jurisdiction of the city for the purpose of imposing liability for the cost of the improvement, and that as jurisdiction may not be imposed by consent, the argument of petitioner is not met by the fact that the city actually did have notice and was heard by the commission before the judgment and award were made. We do not regard the omission to provide definite process to bring the city before the commission at a hearing on the necessity for a safe crossing as being fatal to the acquirement of jurisdiction over the municipality by the commission. The latter is both a court and an administrative tribunal. As a judicial body it has by implication all the powers necessary for the exercise of its duty. The city

of San Jose does not complain that it had no day in court. It had notice to appear; actually did appear and was heard upon issue joined and evidence produced; and it had opportunity for review of the judgment. But aside from the power to summon and hear parties in interest—one which is necessarily involved in the judicial authority enjoyed by the commission, section 53 of the Public Utilities Act confers upon it power to prescribe rules of practice and procedure. Action has been taken under this authorization and it is shown that in the controversy between the city and the public service corporation these rules were followed.

Petitioner's remaining point is that the commission acted in excess of its jurisdiction in failing, as a prerequisite to the grant of any authority to the Southern Pacific Company to cross certain specified streets in the city of San Jose, to require the said company to obtain a franchise from the municipality for such crossing. There is no merit in this point. The order of the commission did not assume to enumerate all of the conditions with which the public service corporation must comply before being permitted to cross the streets in question. Whether or not a franchise to be granted by the city was requisite for the extension of the tracks across the streets the commission was not called upon, and we are not now called upon, in this proceeding, to determine. In the exercise of the police power conferred upon it, the commission was merely deciding how the safety of the public should be best preserved when the crossings should be made, if the contemplated extension should be consummated. The order was prospective both in its terms and its scope.

The writ of *certiorari* is dismissed.

Shaw, J., Sloss, J., Henshaw, J., and Angellotti, C. J., concurred.