[S. F. No. 10183.  In Bank.—March 7, 1923.]

## CITY OF SAN BERNARDINO (a Municipal Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] Railroad Commission—Jurisdiction—Municipal Corporations—Constitutional Law—Legislature.—The authority vested in the legislature by section 22 of article XII of the constitution to confer upon the Railroad Commission additional powers "which are not inconsistent with the powers conferred upon the Railroad Commission in this constitution," and which authority is "expressly declared to be plenary and unlimited by any provision of this constitution," is limited only by the authority conferred upon municipal corporations by the more specific provisions of sections 6 and 8 of article XI, with respect to municipal affairs, and by the qualification that "the powers conferred must be such as are cognate and germane to the, regulation and control of public utilities."

[2] Id.—Public Utilities Act—Validity of Section 43—Regulation of Railroad and Highway Crossings—State Affair.—The contention that section 43 of the Public Utilities Act, conferring jurisdiction upon the Railroad Commission to regulate the installation, maintenance, etc., of crossings of railroads and highways, is void, in so far as it attempts to vest the Railroad Commission with power over municipalities, cannot be maintained, as such regulation is a state and not a municipal affair.

[3] Id.—Apportionment of Maintenance of Viaduct—Power of Railroad Commission.—The Railroad Commission has power, under section 43 of the Public Utilities Act, to apportion between a railroad company and a municipality the cost of maintenance of a viaduct after its construction at a crossing of the railroad and a highway in the city, which viaduct constituted an elevated highway, under which the trains were operated, and which was constructed by the railroad company and deeded to the city, under an agreement made at the time of the construction of the first portion that the city would defray the expense of maintenance, but no agreement being made as to the maintenance of a portion later constructed.

[4] Id.—Cost of Maintenance—Funds Available to City.—Under an order of the Railroad Commission, requiring a municipality to maintain a portion of a viaduct constructed at a crossing of a railroad and a highway in the city, at "its sole cost and expense," the latter is free to provide the necessary funds by any appropriate method available to it under the law, and not necessarily out of its general or street funds.

APPLICATION for Writ of Review to annul an order of the Railroad Commission of California apportioning cost of maintenance and repair of viaduct. Order affirmed.

The facts are stated in the opinion of the court.

William Guthrie for Petitioner.

Hugh Gordon and William W. Clary for Respondent.

MYERS, J.—Writ of review to annul an order of the Railroad Commission apportioning between the petitioner and the Atchison, Topeka & Santa Fe Railway Company the cost of maintenance and repair of a viaduct over the railway tracks of the latter.

In 1907, and for a long time prior thereto, Mt. Vernon Avenue was a public highway in the city of San Bernardino, which was crossed, at grade, between Third Street and Fourth Street, in said city, by three or more tracks of the railway company. The latter being desirous of laying additional tracks to extend its switching yards, entered into negotiations with the city authorities which resulted in an agreement or understanding to the effect that the city should vacate that portion of Mt. Vernon Avenue between Third and Fourth Streets, in consideration whereof the railway company should erect over the portion thus vacated a viaduct for highway purposes, on condition that the city should thereafter maintain the same "so long as the same shall be used by the public for travel thereon." This agreement was carried out. The city by ordinance abandoned and vacated that portion of the highway, on the expressed condition that the railway company should construct the viaduct in accordance with plans and specifications therein referred to, and when completed should convey the same to the city, "said deed or conveyance to be upon condition that the expense of maintaining said viaduct will thereafter be borne solely by said city." The viaduct was constructed and conveyed to the city by deed of conveyance containing the above-quoted condition, and the city by resolution accepted the same. Upon the completion of the viaduct there were fifteen tracks laid across the land which previous to the closing had been Mt. Vernon Avenue. In 1916 the rail-

way company, desiring to further extend its yards, negotiations resulted in a further agreement, or understanding, similar to the first, as a result of which an additional portion of Mt. Vernon Avenue was vacated by ordinance. The railway company constructed an addition to the viaduct, extending the same approximately three hundred feet farther south, and conveyed the extension thereof to the city by deed. With respect to this extension, however, so far as the evidence discloses, nothing was said, either orally or in writing, upon the subject of the cost of future maintenance thereof. After the completion of the extension to the viaduct there were approximately thirty-eight tracks crossing thereunder. The viaduct consisted of a steel structure with a wood floor, constituting an elevated highway about twenty feet in width, in addition to the sidewalk thereon, and at a height sufficient to permit the operation of trains underneath. In 1920 the plank roadway of the old portion of the viaduct was, and for three years had been, very badly out of repair, so much so that it constituted a danger to traffic passing over it.

In this situation the railway company filed an application before the Railroad Commission setting forth the facts above outlined and praying that the commission after a hearing "make such orders and directions with respect to the maintenance and care of said viaduct as may be just." The city filed an answer and an amendment thereto, substantially admitting the facts alleged in the petition, but denying the jurisdiction of the Railroad Commission in said matter, and alleging that the city had no power or authority to enter into the agreement therein referred to for the maintenance of the viaduct by it. After hearings therein the commission made the order which is now up for review, wherein it found as a fact that public safety, convenience, and necessity require the maintenance and repair of the viaduct, and require the making of an order apportioning the cost of such maintenance and repair between the railway company and the city, and ordered that the railway company shall maintain "at its sole cost and expense" the new portion of the viaduct, and that the city shall maintain "at its sole cost and expense" the old portion thereof.

With respect to petitioner's contention that its agreement with the railway company for the maintenance of the via-

duct was ultra vires, it is to be noted that the commission, while taking cognizance of this agreement, expressed no opinion as to the validity thereof as between the parties thereto, but, being of the opinion that even though valid as between the parties it would not be binding upon the commission, it predicated its order not upon this agreement but upon its finding that the apportionment made by it was just and equitable. For this reason we are not called upon to determine the question of the binding effect of that agreement as between the parties thereto.

[1] Petitioner contends that the commission was without jurisdiction to make the order in question and that it exceeded its jurisdiction in so doing. The authority vested in the legislature by section 22 of article XII of the constitution to confer upon the commission additional powers "which are not inconsistent with the powers conferred upon the Railroad Commission in this constitution," and which authority is "expressly declared to be plenary and unlimited by any provision of this constitution," has been held to be limited only by the authority conferred upon municipal corporations by the more specific provisions of sections 6 and 8 of article XI, with respect to municipal affairs (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441, 449 [166 Pac. 351]), and by the qualification that "the powers conferred must be such as are cognate and germane to the regulation and control of public utilities." (*Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, 656, 702 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119, 1143].)

Pursuant to this plenary authority, the legislature, in 1915, enacted the Public Utilities Act, and provided in section 43 thereof, as amended in 1917, as follows: "(a) No public road, highway or street shall hereafter be constructed across the track of any railroad corporation *at grade,* nor shall the track of any railroad corporation be constructed across a public road, highway or street *at grade,* nor shall the track of any railroad corporation be constructed across the track of any other railroad or street railroad corporation *at grade,* nor shall the track of a street railroad corporation be constructed across the track of a railroad corporation *at grade,* without having first secured the permission of the commission; provided, that this subsection shall not apply to the replacement of lawfully existing tracks. The commis-

sion shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe. (b) The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, *maintenance,* use and protection of such crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of each crossing of a public road or highway by a railroad or street railroad and of a street by a railroad or *vice versa,* subject to the provisions of section two thousand six hundred and ninety-four of the Political Code so far as applicable, and to alter, relocate or abolish any such crossing, and to require, where in its judgment it would be practicable, a separation of grades at any such crossing heretofore or hereafter established and to prescribe the terms upon which such separation shall be made and the proportions in which the expense of the construction, alteration, relocation or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected or between such corporations and the state, county, municipality or other political subdivision affected. It shall be the duty of each corporation and political subdivision to which any of the expense is apportioned to pay from the funds available therefor in its treasury the amount apportioned to it at the time and to the parties specified by the order of the commission. . . . ''    (All italics herein are ours.)

[2] The contention that the section is void in so far as it attempts to vest the Railroad Commission with power over municipalities was raised and disposed of in *City of San Jose* v. *Railroad Com.,* 175 Cal. 284, 289 [165 Pac. 967], wherein it was said: ''That the control of the manner of constructing [and, *a fortiori,* of maintaining] railroad crossings is a vital and material part of the regulation of railroads and is germane to that subject, is too evident to need supporting argument.'' It is true that in that case the court did not consider whether or not the regulation of such a crossing is a municipal affair, because the city of San Jose had elected to transfer its control over public utilities to the Railroad Commission, and the city of San Bernardino has not done so; but it has since been determined that such regulation is a state affair, not a municipal affair (Civic Center

case, *supra*, p. 450), a determination which applies with even greater force to the instant case, wherein it appears that the maintenance of both the railroad and the highway are matters of much more than local concern. The San Jose case is, therefore, authority herein, if authority be needed for a conclusion so obvious, and we conclude that section 43, as to the respects in which it is here challenged, is a valid exercise of the legislative authority.

[3] But, it is urged, section 43 is here inapplicable because, the separation of grades having been already accomplished, and the portion of the highway at the railroad level having been vacated, we have not the case of "a crossing of a highway by a railroad," but the case of "a highway passing over a railroad." It was held in the Civic Center case, *supra*, that the city has power to "alter the construction of its streets, at such crossings, by elevating them upon a viaduct so as to pass over the railroad, or by making a subway passing under the railroad," without let or hindrance from the Railroad Commission. But it does not at all follow that the commission would thus be deprived of its power to apportion the cost of maintenance of such a viaduct after its construction. It was also said by this court, in that connection: "But if it does interfere [with the operation of the railroad], either at the time or afterward, whether by natural causes or lack of repair of the street as changed, or by reason of changes in the construction or use of the railroad subsequently directed or approved by the Commission, the City must conform to the orders of the Commission so as to avoid such interference." This is claimed to be *obiter*. Perhaps it was in the sense that it was not strictly necessary to the decision. But it was said in the course of a most carefully prepared opinion, for the guidance of the commission in its hearing and determination of a great number of crossing cases, which this court was then directing it to proceed with. Viewed in this aspect, it was analogous to the rules which this court lays down for the guidance of the court below in sending a case back for retrial.

But it is not necessary to rest our conclusion upon this authority. A consideration of the language of section 43 above quoted, with particular reference to the words there italicized, compels the conclusion that the legislature intended the provisions of subdivision (a) to apply only to

crossings at grade, and that it equally intended the provisions of subdivision (b) to apply to all crossings including those at which the grades had been separated as well as those at grade; and that with respect to both sorts of crossings, it meant what it said, to wit: "The Commission shall have the exclusive power to determine and prescribe . . . the terms of . . . maintenance . . . of each crossing of a public road or highway by a railroad." There can be no doubt that the viaduct in question is, and ever since its construction and acceptance by the city has been, a public highway. Neither is there room for doubt that the primary object sought and effected by the city and the railroad company by means of the various transactions above outlined, was, in substance and effect, the separation of grades at that crossing; and the situation resulting therefrom is that of "a crossing of a public highway by a railroad," though not at grade.

It is urged, upon the authority of the Civic Center case, that, conceding the authority of the commission to apportion the cost of maintenance of the viaduct, it cannot exercise that authority unless or until the viaduct actually interferes with the operation of the railroad. That case does not so hold. Nor are we persuaded to adopt so narrow a view. To hold that the commission, having this authority, may not exercise it until, perchance, a passenger train shall be derailed by a broken plank fallen from a viaduct which has been "badly out of repair," and unrepaired, for three years, would be, in large measure, to defeat the purpose of the act which conferred the authority. It is true that in the instant case the city repaired the viaduct before the commission entered its order. But it is significant that no repairs were made until after this proceeding was instituted and a hearing had before the commission.

[4] Petitioner objects to the form of the order, requiring it to maintain its portion of the viaduct at "its sole cost and expense," which it construes to mean that the cost thereof must be paid out of the general or street fund of the city; thus precluding it from proceeding under any of the street improvement acts. We do not construe the order as having that effect. Having first determined that the public safety, convenience, and necessity required that it should apportion the cost of maintenance of the viaduct, the sole

remaining question before the commission was as to the manner in which that cost should be apportioned, as between the two parties who were interested in its maintenance, namely, the railroad company on the one hand and the city on the other. All of the repairs immediately necessary had been made. All that was determined by the order was that thereafter the burden of maintaining a specified portion of the structure should rest upon the city, as distinguished from the railroad company. The city was left free to provide the funds necessary thereto by any appropriate method available to it under the law.

The order is affirmed.

Kerrigan, J., Waste, J., Seawell, J., Lawlor, J., Lennon, J., and Wilbur, C. J., concurred.