[L. A. No. 16232.   In Bank.—June 30, 1938.]

VICTOR MOREL, Petitioner, v. RAILROAD COMMISSION
OF THE STATE OF CALIFORNIA, Respondent.

Dario H. Nelson for Petitioner.

P. N. McCloskey, Ray L. Chesebro, City Attorney (Los Angeles), Frederick von Schrader and Newton J. Kendall, Assistant City Attorneys, and John L. Bland, Deputy City Attorney, as *Amici Curiae*, on Behalf of Petitioner.

Ira H. Rowell, Frank B. Austin and Herbert Cameron for Respondent.

CURTIS, J.—By this proceeding the petitioner seeks to annul an order of the respondent, the Railroad Commission of the State of California, requiring the petitioner, Victor Morel, to cease and desist from conducting any and all operations for the transportation of property for compensation or hire, as a business, over the public highways in the city of Los Angeles by means of any motor vehicle, unless and until he shall first have secured from the Railroad Commission a proper permit authorizing him to operate the same.

The order which petitioner seeks to have annulled was made, and the proceedings leading up to the making of said order were held, in pursuance of the authority which it is claimed was conferred upon the respondent Railroad Commission by the City Carriers' Act (Stats. 1935, chap. 312), as amended in 1937. (Stats. 1937, chap. 286.)

In defining the terms used in the act, section 1 (f) provides: "The term, 'carrier' when used in this act means every corporation or person . . . engaged in the transportation of property for compensation or hire as a business over any public highway in any city or city and county of this state by means of a motor vehicle or motor vehicles."

Section 2 reads as follows: "No carrier shall engage in the business of the transportation of property for compensation by motor vehicle over any public highway in any city of this state, except in accordance with the provisions of this act, which the Legislature hereby declares to be enacted under the power of the State to regulate the use of public highways."

Section 3 of the act provides for the issuance by the Railroad Commission of a permit authorizing such operations. Section 4 provides for adequate protection against liability imposed by law upon such carrier for the payment of damages for personal bodily injuries, including death resulting therefrom. Section 5 makes further provision as to the manner in which this protection may be secured. Section 7 makes it obligatory for each carrier to display upon the vehicle in use a distinctive license plate approved by the Railroad Commission. Section 8 provides for the payment of a fee of $3 upon the filing of an application for a permit and an annual registration fee of $1. By section 9, the Railroad Commission is authorized to establish or approve "just, reasonable and nondiscriminatory maximum or minimum or maximum and minimum rates to be charged by any carrier subject to this act". The remaining provisions of the act relate to matters not involved in the proceeding before us. It will be noted that the provisions of this act apply equally to all carriers whether common carriers or private carriers transporting property for compensation upon the streets of a city.

Petitioner first contends that it is beyond the power of the legislature to confer jurisdiction upon the Railroad Commission to regulate, or in anywise to control, the business of a private carrier.

The Railroad Commission was created and derives in part its power in pursuance of the provisions of section 22 and section 23 of article XII of the Constitution. The powers therein enumerated are further augmented by the authority granted to the legislature by section 23 to confer such additional power of the same kind or different from those conferred upon the Railroad Commission in the Constitution, and the authority of the legislature to confer such additional powers is expressly declared "to be plenary and unlimited by any provision of this Constitution". These sections of the Constitution have been the subject of numerous decisions by this and the appellate courts of this state, in which the courts

have attempted to define not only the powers which are directly conferred upon the commission by these sections of the Constitution, but the additional powers which by virtue of the authority given it by the Constitution, the legislature may empower the commission to exercise. One of the limitations placed upon the grant of authority to confer additional powers upon the commission, it has been held, is that such additional powers must be cognate and germane to the regulation of public utilities, and when the power thus conferred relates to the regulation of transportation companies, it must be cognate and germane to the regulation of railroads or other transportation companies that arc in fact common carriers. (*Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 Pac. 1119, 50 L. R. A. (N. S.) 652, Ann. Cas. 1915C, 822]; *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526 [192 Pac. 25, 10 A. L. R. 1425]; *San Bernardino* v. *Railroad Com.,* 190 Cal. 562 [213 Pac. 980]; *Frost* v. *Railroad Com.,* 197 Cal. 230, 241 [240 Pac. 26].) ▇▇▇ The question then arises whether the regulation of private carriers is cognate and germane to the regulation of common carriers. This question received a direct answer by this court in its opinion in *Frost* v. *Railroad Com., supra.* In that case, we held, referring to the question just stated: "The question thus presented is whether the regulation of the business of a private carrier engaged in the business of transporting property for hire upon the public highways between fixed termini or over a regular route is cognate and germane to the regulation of the business of a common carrier who. is engaged in like transportation. We think this question must be answered in the affirmative. It is at once apparent that the private carrier is, or at least may be, in direct competition with the public carrier who is operating over the same route and whose business it is the duty of the commission to supervise and regulate. The primary purpose of such regulation is to secure the adequacy, regularity, and reliability of service, and the reasonableness of rates and charges therefor (*Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 Pac. 1000]). To accomplish this end, there must of necessity be some restriction upon competition. As was said by the Supreme Court of Washington: 'The purpose of the transportation act . . . is to permit the establishment of regular and dependable service whenever public necessity and convenience requires. No adequate service can be given without

proper equipment . . . An income must be earned, which will cover operating costs and depreciation, and give some return on the investment or the service cannot be long continued. In the case of *Public Utilities Com.* v. *Garviloch,* 54 Utah, 406 [181 Pac. 272], the supreme court of Utah said: ''The granting of a certificate of convenience and necessity by the commission to Chandler, therefore, was in the nature of a limited franchise, which authorized him to operate his automobile stage line over the route designated in the certificate for the time and under the conditions therein specified. The certificate, therefore, not only confers the authority to operate a stage line, but it necessarily also affords him protection against anyone who unlawfully interferes with the right thereby conferred. If such is not the legal effect of the certificate then the operation of utilities may easily become detrimental rather than beneficial to the public and thus result in a farce.'' ' (*Davis* v. *Nickell,* 126 Wash. 421 [218 Pac. 198].)''

As far as our research has gone, this pronouncement is the last direct expression of this court upon the question of the power of the Railroad Commission to regulate the business of private carriers when their business is carried on in competition with that of common carriers. It may be questioned whether our decision in the Frost case in its discussion of the cognate and germane theory was not limited to private carriers operating between fixed termini or over a regular route, whose business brings them in competition with common carriers. It so happens that the private carrier, whose rights were involved in the Frost case, was such a private carrier, and therefore the decision in that case must be limited accordingly. But the principle announced in that case was that legislation, the purpose of which was to regulate private carriers whose business was in competition with that of common carriers, was cognate and germane to that pertaining to the regulation of common carriers. While the court was dealing only with private carriers carrying on their business in a particular manner, it does not appear that the manner or mode in which their business was carried on was the determining factor of the decision so long as such business was in competition with that of common carriers. We can see but slight, if any, difference from a practical standpoint between competition brought about by private carriers operating between fixed termini or over a regular route and those who place no such limitations upon their

operations, except that the competition of the latter class would probably be more ruinous than that of the former.

If necessary, therefore, for us to extend the language in the Frost case so as to include all classes of private carriers whose business is in competition with common carriers, and hold that the regulation of all private carriers using the streets of a city for the transportation of property for hire in competition with common carriers is cognate and germane' to regulations of common carriers engaged in like transportation, we have no hesitancy in so holding. We think the principle announced in the Frost case as stated above is applicable to the business of all private carriers in competition with public carriers.

While our decision in the Frost case was reversed by the Supreme Court of the United States (*Frost Trucking Co.* v. *Railroad Com.*, 271 U. S. 583 [46 Sup. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457]), the reversal was not placed upon the ground that the regulation of private carriers was not cognate and germane to the regulation of common carriers, but upon the ground that the Act (the Auto Stage and Truck Transportation Act, as amended in 1919) as construed by the Supreme Court of this state, compelled private carriers not merely to submit themselves to regulation by the commission appropriate to private carriers, but forced them, in order to enjoy the use of the highways, to submit to the condition of becoming common carriers and to be regulated by the Railroad Commission as such common carriers. Accordingly the act was held to violate the due process clause of the fourteenth amendment to the Constitution of the United States. That portion of our opinion and decision in which we held that the regulation of the business of a private carrier engaged in business of transporting property for hire upon the public highways was cognate and germane to the regulation of the business of a common carrier who is engaged in like transportation was in no way disturbed or affected by the decision rendered by the Supreme Court of the United States upon the appeal to the last named court. In the face of the ruling in that case, we are unable to agree with the contention of petitioner that it is beyond the power of the legislature to confer jurisdiction upon the Railroad Commission to regulate in the manner set forth in the City Carriers' Act the business of private carriers using the streets of the city for the transportation of property for hire when

such business is in competition with that of common carriers engaged in like transportation.

Petitioner relies upon certain language used by this court in the cases of *People* v. *Duntley*, 217 Cal. 150, 162 [17 Pac. (2d) 715], and *Lang* v. *Railroad Com.*, 2 Cal. (2d) 550, 556 [42 Pac. (2d) 639]. The language in *People* v. *Duntley*, *supra*, upon which petitioner relies is found on page 162 of the opinion and reads as follows: "If one (certificate of public convenience and necessity) be denied, the common carrier as such must go out of business entirely. If it be granted, the rates and charges and services are subject to regulation by the Railroad Commission. *If it had been the intention of the people of the state to subject all carriers, whether public or private, to regulation by the Railroad Commission,* the Constitution could have so provided, as was done by general statute in the state of Kansas. Not having done so, the refusal of a carrier in good faith to dedicate his property to public use and his insistence upon his right to operate as a contract carrier under the exactions imposed by law upon him in that capacity, would seem to be entitled to respect." The emphasized portion of the above quotation is particularly relied upon by petitioner. The only question involved in the case of *People* v. *Duntley, supra,* was one of taxation, the right to subject the defendant's property to a tax in pursuance of article XIII, section 15, of the Constitution, and section 3664a of the Political Code, then in force. It was held that only property of a common carrier was subject to such a tax and that as the defendant was a private or contract carrier he was not liable for the payment of any tax under said sections of the Constitution and the Political Code. The Railroad Commission has no jurisdiction nor any duty to perform over matters of taxation, and it is difficult to perceive how the language quoted above from the opinion of *People* v. *Duntley, supra,* can have any authoritative force in the decision of any issue involved in the present proceeding. We, therefore, do not regard said statement, taken from said decision, as a pronouncement of the law upon the power of the legislature to confer authority upon the Railroad Commission to regulate private carriers when their business is in direct competition with that of common carriers. This conclusion finds support in the following statement found on page 159 of the opinion in that case: "Unregulated truck transportation over the highways has developed a difficult and perplexing problem.

The state of California has approached the problem of such regulation in a much more restricted fashion. Common carriers are required under the Auto Stage and Truck Transportation Act to obtain from the Railroad Commission a certificate of public convenience and necessity. Contract carriers are claimed to be without adequate regulation both as to rates of service, use of the highways, and interference with regulated common carriers. This is undoubtedly true, but· the problem suggested is a legislative and not a judicial one. We are here dealing not with a regulatory measure in its proper sense, but with a tax question arising under our constitution and statutes.''

In the case of *Lang* v. *Railroad Com., supra,* it is stated that: ''They (private carriers) have never dedicated their property to public use. The Railroad Commission has no jurisdiction over them, either in the matter of fixing the rate that they will charge or for any other purpose.'' That this statement was made in view of the law as it then existed when there was no statute in force which purported to give the commission any regulatory authority over private carriers is, we think, made apparent ·by the following language found on page 565 of the opinion: ''Until truck carriers are brought within the jurisdiction of the commission and the latter is given power to fix rates to be charged by them, we see no way that the commission can stabilize this business between them and the rail carriers.'' We find nothing, therefore, in either of these two cited cases at variance with our conclusion that it is within the power of the legislature to confer authority upon the Railroad Commission under proper limitations and within legal bounds, to regulate the business of private carriers when they are in competition with common carriers. On the other hand, it must be apparent that such regulation is necessary in order to stabilize the transportation business to the end that both private and common carriers may be protected from unrestrained and ruinous competition.

No question is raised as to the fact that private carriers may be in competition with common carriers in business carried on wholly within the limits of a single municipality. It is not necessary, therefore for us to dwell to any extent upon this phase of the case. The competition may not be as acute or as destructive as when the business is carried on outside of a city, but it is of sufficient extent and bears such a relation to the whole question of transportation as to dis-

rupt, unless restrained, the entire plan of regulating transportation between the several types of carriers now using the public highways.

It is further contended that the City Carriers' Act is unconstitutional and therefore void for the reason that it imposes upon a private carrier the status of a common carrier. It is well settled that a private carrier may not be converted into a common carrier by mere legislative fiat. This principle of law was approved in the Frost case, 197 Cal. 230, 236 [240 Pac. 26], and numerous other cases which might be cited to the same effect. But the City Carriers' Act makes no such change in the character or status of private carriers. Under the act they are still private carriers; they may choose their own patrons, and refuse or accept business as suits their convenience, but are subject to regulation in a limited extent by the Railroad Commission. In order to use the streets of the city for the purpose of carrying on their business under said act, they must, in the first instance, secure a permit from the commission authorizing them to carry on such business. Before granting a permit, the commission must require of the carrier adequate protection by indemnity insurance, or otherwise, against liability for injuries to person or property. A small fee of $3 is charged for the permit and the commission is empowered to establish or approve reasonable, nondiscriminatory, maximum and minimum rates to be charged by such carriers. A statute embodying such requirements of a private carrier does not convert the carrier into a common carrier. (*Stephenson* v. *Binford*, 287 U. S. 251, 265 [53 Sup. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721].)

The cited case involved a statute of the state of Texas imposing regulations upon private carriers almost identical with those contained in the City Carriers' Act. The same claim was made in that case as is made in the present proceeding that the statute imposed upon a private carrier the status of a common carrier. This contention was disposed of by the following statement found on pages 267 and 268 of the opinion: "The question decided in *Frost Trucking Co.* v. *Railroad Commission*, 271 U. S. 583 [46 Sup. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457], differs entirely from that here presented. There (p. 592) the California Supreme Court had construed a provision of the state statute which required the private contract carrier to obtain not a permit, as here,

but a certificate of public convenience and necessity, before doing business over the state highways, as a condition obliging him to dedicate his property to the business of public transportation and to subject himself to all the duties and burdens imposed by the act upon common carriers. This court, in accordance with the settled rule, accepted that construction as binding and, in that view, said (p. 592): ' . . . the case presented is not that of a private carrier who, in order to have the privilege of using the highways, is required merely to secure a certificate of public convenience and become subject to regulations appropriate to that kind of a carrier; but it is that of a private carrier who, in order to enjoy the use of the highways, must submit to the condition of becoming a common carrier and of being regulated as such by the Railroad Commission. The certificate of public convenience, required by section 5 is exacted of a common carrier and is purely incidental to that status. The requirement does not apply to a private carrier *qua* private carrier, but to him only in his imposed statutory character of common carrier. Apart from that signification, so far as he is concerned, it does not exist.

''On the contrary, the Texas statute in respect of permits deals exclusively with the private contract carrier, and requires the issue of the permit not to him in the imposed character of a common carrier, but in his actual character as a private contract carrier. If the California statute requiring a certificate had been thus interpreted by the highest court of the state, the foregoing quotation clearly suggests that our decision might have been otherwise.''

This language is applicable to the City Carriers' Act, the terms of which, as we have seen, are substantially like those of the Texas statute under review by the Supreme Court of the United States. The contention of petitioner therefore, that the act imposes upon private carriers the status of common carriers cannot be sustained.

The court in *Stephenson* v. *Binford, supra,* reviews the provisions of the Texas statute, in which are the requirements respecting a permit to be issued to private carriers before they are permitted to use the public highways, the authority conferred upon the Railroad Commission to fix maximum and minimum rates, and the procuring of indemnity insurance, and holds that they are all reasonable regulations to be imposed upon a person using the highways for the transportation of

property for compensation. Upon this question the court held as follows: (page 272) "The assailed provisions, in this view, are not ends in and of themselves, but means to the legitimate end of conserving the highways. The extent to which, as means, they conduce to that end, the degree of their efficiency, the closeness of their relation to the end sought to be attained, are matters addressed to the judgment of the legislature, and not to that of the courts. It is enough if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end."

By reference to the preamble of the City Carriers' Act, it will be noted that one of the purposes of the act is to "preserve for the public the full benefit and use of the public highways". We quote from the preamble as follows: "The use of the public highways for the transportation of property for compensation is a business affected with a public interest and it is hereby declared that the purpose of this act is to preserve for the public the full benefit and use of public highways consistent with the needs of commerce without unnecessary congestion or wear and tear upon such highways." It is apparent therefore that one of the express purposes of the City Carriers' Act is the preservation of the highways and to that end it is declared necessary to regulate the use of the highways by those transporting property thereon for commercial purposes. The case of *Stephenson* v. *Binford, supra,* is direct authority not only that the state has the power and authority to regulate the use of public highways for business purposes but that the regulation, like that imposed upon private carriers by the City Carriers' Act, is lawful and reasonable. The same conclusion was reached by the Supreme Court of Washington as appears from the following statement from the case of *Hadfield* v. *Lundin,* 98 Wash. 657, 663 [168 Pac. 516, Ann. Cas. 1918C, 942, L. R. A. 1918B, 909] : "If any proposition may be said to be established by authority, the right of the state, in the exercise of its police power, to prohibit the use of the streets as a place of private business or as the chief instrumentality in conducting such business, must be held so established. Nor can it be questioned that the power to prohibit includes the power to regulate, even to the extent that regulation under given conditions may be tantamount to a prohibition. Where the power to

prohibit exists, the reasonableness of any regulation is palpably a legislative question, pure and simple."

The foregoing authorities not only establish the power of the legislature to regulate the use of highways for commercial purposes and that the regulation imposed by the City Carriers' Act is reasonable and within the power of the legislature to enact, but we think they meet all other objections to the validity of said act made by petitioner and by the various *amici curiae,* except that raised by the petitioner and the city of Los Angeles, as an *amicus curiae,* in which it is contended that the matter of regulating the use of the streets of a city for commercial purposes is a municipal matter and is not subject to the control of the legislature.

■ Upon this question after reviewing the cases of *Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172], and *In re Murphy,* 190 Cal. 286 [212 Pac. 30], this court held: "The effect of these decisions is to declare that whenever the state of California sees fit to adopt a general scheme for the regulation and control of motor vehicles upon the public highways of the state, the entire control over whatever phases of the subject are covered by state legislation ceases in so far as municipal or local legislation is concerned." (*Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334].)

It is true that these cases involve regulation of the *use* of city streets and the instant case relates to the regulation of a *business* transacted upon such streets, and it is contended for this reason that these cases are not authority in support of the right of the state to regulate business carried on on the streets of a city. But the transacting of business upon a street necessarily requires the use of the street for that purpose, and the use of the street for the purpose of transacting business thereon is as a rule a much more onerous and burdensome use than the mere traveling over said streets by an ordinary private conveyance. If the latter use is a matter of public concern, we think the former which imposes far greater burdens upon the streets is also a matter of public concern and therefore subject to regulation imposed by the state.

For the reasons herein stated, we are of the opinion that the order of the respondent Railroad Commission should be affirmed, and it is so ordered.

Shenk, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.