[S. F. No. 6666.   In Bank.—August 3, 1914.]

TITLE GUARANTEE AND TRUST COMPANY, Trustee etc., and MIRADERO WATER COMPANY, Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

PUBLIC UTILITIES—BASIS OF POWER OF RAILROAD COMMISSION OVER. The powers of the railroad commission over public utilities are derived from the Public Utilities Act of 1911, enacted in pursuance of the authority given to the legislature by section 23 of article XII of the constitution, as amended on October 10, 1911. (Stats. Ex. Sess. 1911, p. xlvii.)

Id.—Water Companies—Franchise to Furnish Water to Inhabit-
ants of City—Charge for Service Pipe Connections—Duty of
Company to Make Connection—Inhabitants cannot Lay Pipe
in Streets.—A franchise giving the right to furnish water to the
inhabitants of a city, at rates to be fixed, and to use the streets
as a place in which to lay the necessary pipes, does not authorize
the holder to charge consumers for the expense of laying service
pipes from the main to consumers along the street, unless such
right is conferred by some clause of the franchise or by some pro-
vision of law applicable to such service. The franchise to furnish
water to the inhabitants includes the duty of conveying the water
to the consumer, and such duty is not fully performed except by
laying the service pipe to the premises of the consumer. The in-
habitants have been given no right to use the streets at all for
the laying of pipes therein. Their use of the streets for that pur-
pose would be a private use, and they could not make the connection
without unlawfully obstructing the public street.

Id.—Consumer not Obliged to Lay Service Pipe or Pay Expense
Thereof.—There is no provision of the law in this state making it
the duty of the consumer to lay the service pipe, or to pay the ex-
pense thereof. Section 549 of the Civil Code implies, if it does not
actually express, the foregoing doctrine.

Id.—Duty of Company to Deliver Water—Company Enjoying Fran-
chise cannot Question Its Corporate Authority—Power of
Regulation.—Under section 549 of the Civil Code, every corpora-
tion formed to supply water to cities or towns is under the duty to
deliver the water to the consumer, and any corporation actually en-
gaged in supplying water to the inhabitants thereof must be deemed
to be a corporation formed for that purpose, in any controversy
between it and the consumer, or between it and the municipality,
with regard to its duty under that section. While continuing to
enjoy the franchise it could not escape the duty by showing that its
articles of incorporation did not give it the authority to engage in
the service. It follows that the public agency to which the regulat-
ing power may be delegated by law, has power to require such a
corporation to lay service connections to the property line of the
consumers, and to install meters, without charge to the consumers.

Id.—Control of Cities Over Existing Public Utilities—Want of
Power of Railroad Commission—Construction of Constitution
and Public Utilities Act.—Under the proviso contained in section
23 of article XII of the constitution, as amended October 10, 1911,
and section 82 of the Public Utilities Act of 1911, the powers of
control over existing public utilities which were vested in any city
at the time of the adoption of the amendment and of the taking
effect of the Public Utilities Act on March 23, 1912, are still re-
tained by such city, and such powers do not pass to the railroad
commission until, at an election for that purpose pursuant to the

act of January 2, 1912, (Stats. Ex. Sess. 1911, p. 168), the qualified electors of the city, voting thereon, shall have voted not to retain such power or powers.

ID.—CITY OF SIXTH CLASS—REGULATION OF WATER COMPANIES—SERVICE CONNECTIONS WITHOUT CHARGE TO CONSUMERS—INSTALLATION OF METERS.—Prior to and on October 10, 1911, the date of the adoption of said constitutional amendment, cities of the sixth class possessed the power to regulate water corporations engaged in supplying water to the inhabitants thereof, with respect to their operations and service within such cities, and in so doing had power to make a regulation requiring such corporations to lay service connections to the property line of the consumers, and to install meters, without charge to the consumers. Such power, in the absence of its divestment at an election held in pursuance of the act of January 2, 1912, remained vested in such city, and the railroad commission was without power in that respect, and its attempted order establishing such a regulation is void.

ID.—POWER OF CITY TO FIX RATES INCLUDES POWER TO FORBID CHARGE FOR METERS.—Section 19 of article XI, and section 1 of article XIV, of the constitution, and the act of March 7, 1881 (Stats. 1881, p. 54), each confers upon the cities in this state the power to fix the rates at which water is to be delivered to the inhabitants of a city by any company engaged in that service. A regulation forbidding a charge for meters is in pursuance of this rate fixing power of such cities, and could not be vested in the railroad commission, except by a vote of the city.

ID.—POWER TO ORDER SERVICE CONNECTION WITHOUT CHARGE TO CONSUMER—CITY OF SIXTH CLASS POSSESSES.—A city of the sixth class, at the time of the adoption of such constitutional amendment, had power to establish by ordinance and to enforce a regulation requiring such water companies to lay service connections to the property line of consumers, without charge to them. Such power is conferred by section 549 of the Civil Code, giving the city authorities power to "prescribe proper rules relating to the delivery of water," taken in connection with section 11 of article XI of the constitution, providing that "any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws," and with subdivision 14 of section 862 of the Municipal Corporation Act, empowering cities of the sixth class to punish violation of ordinances by fine and imprisonment as misdemeanors.

APPLICATION for a Writ of Certiorari directed to the Railroad Commission of the state of California.

The facts are stated in the opinion of the court.

W. G. Cooke, E. W. Sargent, and Tanner, Odell, Odell & Taft, for Petitioners.

Max Thelen, and Douglas Brookman, for Respondent.

Jones & Evans, *Amici Curiae.*

SHAW, J.—This is a proceeding in *certiorari*, under the provisions of sections 67 and 68 of the "Public Utilities Act" of 1911 (Stats. Ex. Sess. 1911, p. 55), to review an order of the state railroad commission requiring the plaintiffs, as public service water companies, to install meters and lay service connections in the city of Glendale, without charge to the consumers.

The plaintiffs, respectively, on October 10, 1911, were and ever since have been engaged in the business of supplying water to the inhabitants of portions of the city of Glendale. They had each made and were enforcing a rule whereby each consumer of water from them, respectively, was charged and compelled to pay fifteen dollars for installing a meter and making service connection between the water main of the company in the street and the property line of the consumer. On the application of the city of Glendale, the railroad commission made the order complained of, which is as follows:

"It is hereby ordered that said rule or regulation be and the same is hereby abrogated, and that said defendants be and they are hereby ordered to make service connections to the property line and install meters free of charge for persons living in the city of Glendale along the mains or pipe lines of said companies and desiring connection for the service of water."

It is contended by the plaintiffs that the railroad commission has no power to supervise or regulate, in this respect, corporations or persons engaged in supplying water to the inhabitants of cities of the sixth class, to which class Glendale belongs.

The powers of the railroad commission over such public utilities are derived from the Public Utilities Act of 1911, enacted in pursuance of the authority given to the legislature by section 23 of article XII of the constitution, as amended on October 10, 1911. (Stats. Ex. Sess. 1911, p. 47.)

A franchise giving the right to furnish water to the inhabitants of a city, at rates to be fixed, and to use the streets as a place in which to lay the necessary pipes, does not authorize the holder to charge consumers for the expense of laying service pipes from the main to consumers along the street, unless such right is conferred by some clause of the franchise or by some provision of law applicable to such service. The franchise to furnish water to the inhabitants includes the duty of conveying the water to the consumer. The inhabitants have been given no right to use the streets at all for the laying of pipes therein. Their use of the streets for that purpose would be a private use. They could not make the connection without unlawfully obstructing the public street. The company, therefore, does not perform its full duty except by laying the service pipe to the premises of the consumer. (See *Hatch* v. *Consumers' Co.,* 17 Idaho, 204, [40 L. R. A. (N. S.) 263, 104 Pac. 670] ; *Consumers' Co.* v. *Hatch,* 224 U. S. 148, [56 L. Ed. 703, 32 Sup. Ct. Rep. 465] ; *Pocatello W. Co.* v. *Standley,* 7 Idaho, 518, [61 Pac. 518] ; *Bothwell* v. *Consumers' Co.,* 13 Idaho, 568, [24 L. R. A. (N. S.) 485, 92 Pac. 533] ; *Montgomery* v. *McDade* (Ala.), 60 South. 797; *Pine Bluff* v. *Toney,* 96 Ark. 345, [Ann. Cas. 1912B, 544, 131 S. W. 680] ; *International W. Co.* v. *El Paso,* 51 Tex. Civ. App. 321, [112 S. W. 816] ; *Cleveland* v. *Malden W. Co.,* 69 Wash. 541, [125 Pac. 769] ; *State* v. *Hoquiam W. Co.,* 70 Wash. 682, [127 Pac. 304].) It is not claimed that there is anything in the nature of a contract between Glendale and either of the plaintiffs that would exempt them, or either of them, from the operation of this rule. There is no provision of the law of this state making it the duty of the consumer to lay the service pipe, or to pay the expense thereof. Section 549 of the Civil Code implies, if it does not actually express, the doctrine above stated. It declares that "All corporations formed to supply water to cities or towns must furnish pure fresh water to the inhabitants thereof, for family uses, so long as the supply permits, at reasonable rates and without distinction of persons, upon proper demand therefor; . . . The board of supervisors, or the proper city or town authorities, may prescribe proper rules relating to the delivery of water, not inconsistent with the laws of the state." This makes it the duty of such corporations to deliver the water to the consumer and brings them within the rule. Any corporation actually

engaged in supplying water to the inhabitants of a city must be deemed to be a corporation formed for that purpose, in any controversy between it and the consumer, or between it and the city, with regard to its duty under that section. While it continued to enjoy the franchise it could not escape the duty by showing that its articles of incorporation did not give it the authority to engage in the service. It follows that the regulation was one which could lawfully be imposed on the plaintiffs by the public agency to which the regulating power may be delegated by law.

The opening sentence of said section 23 of the constitution defines public utilities, including therein almost every conceivable variety of public service, and giving the legislature power to include others, and declares that every person or corporation in the state engaged in any such service is "subject to such control and regulation by the railroad commission as may be provided by the legislature." It then declares that the commission "shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the state of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this constitution." This, if not qualified by any other part of the section, would give the legislature authority to confer upon the commission the power to regulate public utilities in cities, as well as elsewhere. It is not left without qualification, however. The second paragraph of the section, after declaring that upon the passage of laws conferring upon the railroad commission powers respecting public utilities, all the powers of like character conflicting therewith and previously vested in municipalities shall cease, continues with the following:

"Provided, however, that this section shall not affect such powers of control over any public utility vested in any city and county, or incorporated city or town as, at an election to to be held pursuant to laws to be passed hereafter by the legislature, a majority of the qualified electors voting thereon of such city and county, or incorporated city or town, shall vote to retain, and until such election such powers shall continue unimpaired; but if the vote so taken shall not favor the

continuation of such powers they shall thereafter vest in the railroad commission as provided by law.''

Section 82 of the Public Utilities Act is in the same terms as the above proviso.

The effect of these two provisions is that the powers of control over existing public utilities which were vested in any city at the time of the adoption of the amendment and of the taking effect of the Public Utilities Act, on March 23, 1912, are still retained by such city, and that such powers do not pass to the railroad commission until, at an election for that purpose pursuant to the act of January 2, 1912 (Stats. Ex. Sess. 1911, p. 168), the qualified electors of the city, voting thereon, shall have voted not to retain such power or powers. The question whether this rule applies to public utilities which have come into existence or have entered a city since the passage of the Public Utilities Act, is not here involved, and as it has been argued in another case pending, we here express no opinion concerning it. No election has been held in Glendale on the question. Therefore, Glendale still retains such powers of control over public utilities as it had at the dates of the adoption of the amendment and the passage of the Public Utilities Act, and the railroad commission will not possess them until there is such an election with a result favorable to the transfer thereof to it. The question is therefore fairly presented whether or not, prior to October 10, 1911, the date of the adoption of said constitutional amendment, cities of the sixth class possessed the power to regulate water corporations engaged in supplying water to the inhabitants thereof, with respect to their operations and service within such cities, and in so doing to make such orders or regulations as that made by the commission and above set out. If these cities had such power, then it still remains vested in the city of Glendale, the railroad commission did not have the power and the order is void.

Section 19 of article XI, and section 1 of article XIV, of the constitution, and the act of March 7, 1881 (Stats. 1881, p. 54), each confer upon the cities in this state the power to fix the rates at which water is to be delivered to the inhabitants of a city by any company engaged in that service. So far as the order forbids a charge for meters it is a part of this rate-fixing power. In order to fix rates according to the exact quantity of water supplied a meter is necessary. The power

to fix rates in that manner must include the power to say who shall provide and pay for the meter to be used to determine the amount the consumer shall pay. ''The requirement that the party furnishing water shall provide the means necessary for its measurement, so that the quantity furnished and to be paid for may be known, is not an unreasonable regulation. The expense of the meter could not be imposed on the consumer.'' (*Spring Valley W. W.* v. *San Francisco,* 82 Cal. 316, [16 Am. St. Rep. 116, 6 L. R. A. 756, 22 Pac. 917].) ''A meter is a contrivance to regulate the distribution of water by adjusting the quantity and price. It is therefore within the province of the city board's duties, to enable them to fix their rates with exactness, instead of by uncertain estimate, and to deal justly with the consumers'' to install such meter. (*Red Star etc. Co.* v. *Jersey City,* 45 N. J. L. 249.) The New Jersey case holds that the city could not charge the consumer for meters. The passage quoted shows, however, that the installation of the meter is directly connected with the rate charge, from which it follows that the requirement that a meter shall be used is an incident of the process of fixing the rate. The power to direct that the company shall not charge the consumer for the meter necessary to determine the amount of water used and the rate to be paid, is within the scope of the powers of the city and cannot be vested in the railroad commission, except by a vote of the city.

The regulation of charges for service connections is not so directly related to the fixing of rates. We need not determine whether it is a part of that process or not, for it is included in other powers that were vested in cities at the time stated. Section 549 of the Civil Code, above quoted, gives the city authorities power to ''prescribe proper rules relating to the delivery of water.'' Inasmuch as it is the duty of the water company to deliver the water to the premises of the consumer and to lay the necessary service pipes for that purpose, as a part of the water system of the company, it is also the duty of the company to bear the expense of these pipes. It would be a proper rule for the delivery of the water to prohibit the company from charging this expense to the consumer, or from imposing payment of the charge as a condition precedent to the delivery of water to him. The city of Glendale had exercised this power. It passed an ordinance in

1912 requiring water companies to lay service connections at their own expense on demand, giving them authority to install meters at their own expense, forbidding such companies to charge the consumer for meters and declaring a violation of the ordinance to be a misdemeanor punishable by a fine, or imprisonment, or both.

Section 11 of article XI of the constitution provides that "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." There may be some room for doubt whether this would include the power to prohibit charges for service connections within the limits of the city, if it were considered apart from the foregoing clause of section 549 of the Civil Code giving power to prescribe rules for the delivery of water. Subdivision 14 of section 862 of the Municipal Corporation Act empowers cities of the sixth class to punish violations of ordinances by fine and imprisonment as misdemeanors. This, in connection with the constitutional provision and the Civil Code, makes it plain that the city of Glendale has ample power to make and enforce the regulation.

It follows that the railroad commission has not yet acquired the power to make regulations of this character for the government of water companies serving the inhabitants of the city of Glendale and that the order complained of is in excess of its power and for that reason invalid.

It is ordered that said order of the railroad commission be annulled.

Henshaw, J., Sloss, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.