[Civ. No. 8192. First Appellate District, Division One.—July 16, 1932.]

KEY SYSTEM TRANSIT COMPANY (a Corporation), Respondent, v. CITY OF OAKLAND (a Municipal Corporation) et al., Appellants.

734

C. Stanley Wood, City Attorney, Homer W. Buckley, Assistant City Attorney, John W. Collier, Deputy City Attorney, and Preston Higgins, former City Attorney, for Appellants.

Brobeck, Phleger & Harrison, Chapman, Trefethen & Chapman, Frank S. Richards, James S. Moore, Jr., and Kenneth Ferguson for Respondent.

THE COURT.—An appeal by defendant City of Oakland, a municipal corporation, and certain of its officers from a judgment enjoining the enforcement of ordinance numbered 4240, N. S., adopted October 1, 1928, which required all persons operating electric street-cars within the city to maintain upon each of said cars while containing passengers a motorman and a conductor.

On December 19, 1928, the district attorney of Alameda County instituted a prosecution against the plaintiff and one of its employees, charging a violation of the ordinance in that they operated a one-man street-car on what is known as the "Twenty-third Avenue street car line", which is wholly within the municipality. A plea of not guilty was entered, and the present action was brought to enjoin the prosecution on the grounds that the municipality was without power to pass the ordinance, and that, assuming it had jurisdiction to regulate the manner of operating cars, the ordinance was an unreasonable exercise of the police power.

The material provisions of the ordinance are:

"Section One. Every person, company or corporation operating street cars within the city of Oakland by means of electricity shall provide and maintain upon each of such cars while containing passengers at least two employees, to wit, a motorman and a conductor, during all the time said car is in motion within said city, each of said employees to

be an adult not less than eighteen years of age excepting as hereinafter provided.

"Section Two. The council may grant by ordinance permission to operate one-man street cars over such lines and upon such conditions as it may prescribe after an application made therefor."

The trial court found that plaintiff operates a street railway within the municipality and elsewhere in the counties of Alameda and Contra Costa; that its system is a unified service, operating under franchises granted by various cities and towns, and that different traction division lines, of which the line hereinbefore mentioned was one, together with plaintiff's bus lines, transfer passengers to others both within and without the incorporated area served; further that on October 15, 1928, plaintiff filed with defendant city its application requesting authority to continue to operate one-man cars over its Twenty-third Avenue and other lines, which the court found it had been doing for several years previous to the adoption of the ordinance, and that the application was denied on November 13, 1928; that on October 16, 1928, the plaintiff also filed an application with the Railroad Commission for authority to continue such operation, and on November 3, 1928, after a hearing at which defendant municipality was represented, the commission made its order permitting one-man cars to be operated on said Twenty-third Avenue line and other lines of the company. It was also found that on February 17, 1914, pursuant to the provisions of chapter 40 of the Statutes of California, Extra Session 1911, page 163, defendant municipality submitted to its qualified electors the proposition whether it should retain its powers of control over public utilities; that on that date at an election duly and regularly held a majority of said electors voted not to retain such control, but that the same should be vested in the Railroad Commission; and thereafter on February 25, 1914, in accordance with the statute a certified copy of the order declaring the result of the election was duly filed with the commission. The trial court concluded that jurisdiction to regulate the operation of railways within the municipality vested exclusively within the Railroad Commission; that the regulation of plaintiff's lines was a general, not a local matter, and that consequently the ordinance was

void. The court expressly declined to pass upon the second objection made to the validity of the ordinance.

Defendants contend, as stated in their brief, that "the provisions of sec. 23 of art. XII of the Constitution of the State of California (prior to its amendment in 1914) and the 'Hewitt Act' (chap. 40, Statutes, Extra Session 1911) cannot be held applicable to cities operating under freeholders' charters; in other words, they were designed and intended to apply to all cities other than those having freeholders' charters," and that "sec. 23 of art. XII of the Constitution, even though by its provisions specifically declared not subject to or limited by any other provision of the Constitution, is nevertheless limited by secs. 6 and 8 of art. XI thereof relating to charter cities." Said section 23, as amended October 10, 1911, provided that the Railroad Commission should have such power to regulate public utilities as should be conferred upon it by the legislature, authority to confer such power being declared therein "to be plenary and to be unlimited by any provision of this constitution"; and that after the passage by the legislature of laws conferring powers upon the commission respecting such public utilities all powers respecting such public utilities vested in municipal councils or other governing bodies of the cities of the state existing at the time of the passage of such laws should cease so far as such powers conflicted with the powers so conferred upon the commission.

The section contained the provision that "this section shall not affect such powers of control over any public utility vested in any city and county or incorporated city or town as, at a general election to be held pursuant to the laws to be passed hereafter by the legislature, a majority of the qualified electors voting thereon of such city and county or incorporated city or town shall vote to retain, and until such election such powers shall continue unimpaired; but if such vote so taken shall not favor the continuation of such powers they shall thereafter vest in the Railroad Commission as provided by law".

Section 82 of the Public Utilities Act contains the same proviso; and it has been held that as the result the powers of control over existing public utilities vested in any city

were still retained and did not pass to the commission until at an election held for that purpose pursuant to the statute the qualified electors of the city voted not to retain such powers (*Title Guarantee etc. Co.* v. *Railroad Com.,* 168 Cal. 295 [Ann. Cas. 1916A, 738, 142 Pac. 878]).

The charter of defendant city grants to the council the power to regulate utilities within the municipality; and it has been held that the provisions of section 8 of article XI of the Constitution with regard to the amendment of free-holders' charters are exclusive (*Blanchard* v. *Hartwell,* 131 Cal. 263 [63 Pac. 349]; *In re Pfahler,* 150 Cal. 71, 85 [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270]; *Garver* v. *Council of City of Oakland,* 96 Cal. App. 560 [274 Pac. 375]).

Defendants contend that to give effect to section 23 of article XII and the Hewitt Act, where a municipality is operating under a freeholders' charter which grants power to its governing body to regulate public utilities, would result in an amendment of the charter in a manner not sanctioned by the Constitution. But section 23 makes provision for the surrender for a specific purpose by the act of its qualified electors of a power vested in a municipality, no distinction being made between cities organized under general laws and those operating under freeholders' charters; and it is manifest from a reading of the two sections that it was not the intention to use the comparatively cumbrous procedure provided for the amendment of charters in ordinary cases rather than the more direct method of determining the will of the electors as provided by section 23. That such was the fact was assumed, if not decided, in the following cases: *Oro Elec. Corp.* v. *Railroad Com.,* 169 Cal. 466 [147 Pac. 118]; *City of San Jose* v. *Railroad Com.,* 175 Cal. 284 [165 Pac. 967]; and, while not controlling, such has been the construction placed thereon by the Railroad Commission over a long period (*Long Beach Chamber of Commerce* v. *Pacific Elec. Ry. Co.,* 2 Opns. & Ords. R. R. Com. 455; 3 Id. 611).

A special provision on one branch of a subject controls a general provision relating thereto, and will prevail in its application to the subject matter so far as coming within its particular provisions (*Bateman* v. *Colgan,* 111 Cal. 580 [44 Pac. 238]; *Civic Center Assn.* v. *Railroad Com.,* 175

Cal. 441, 449 [166 Pac. 351]); and it is our conclusion that section 23 of article XII of the Constitution and the Hewitt Act were intended to apply to cities governed by a freeholders' charter as well as to others. This section was amended on November 3, 1914, and provides that "From and after the passage by the legislature of laws conferring powers upon the Railroad Commission respecting public utilities all powers respecting such public utilities vested in . . . the several counties, cities and counties, cities and towns . . . shall cease so far as such powers shall conflict with the powers so conferred on the Railroad Commission, provided, however, that this section shall not affect such powers of control over public utilities as relate to the making and enforcement of local police, sanitary and other regulations other than the fixing of rates vested in any city and county, or incorporated city or town, as at an election to be held pursuant to law a majority of the qualified electors shall vote to retain; and until such election such powers shall continue unimpaired . . . " On June 7, 1915, chapter 646 of the Statutes of 1915 (Stats. 1915, p. 1273) was approved. This act, which became effective August 8, 1915, repealed the Hewitt Act, and provided the method to be followed in determining whether the powers of control retained by incorporated cities should be surrendered to the commission. Section 2b of the statute provided that " . . . The term 'powers of control' as used in this act . . . means all powers of control vested in such municipality or municipalities to supervise and regulate the relationship between such public utilities, or such class or classes of public utilities, and their present or prospective customers, consumers or patrons; but said term shall not be construed to include the powers of control vested in any municipality or municipalities to supervise and regulate the relationship between such public utilities, or such class or classes of public utilities, and the general public in matters affecting the health, convenience and safety of the general public, and including matters such as the use and repair of public streets by any public utility, the location of the poles, wires, mains or conduits of any public utility on, under or above any public street, and the speed of common carriers operating within the limits of the municipality."

■ There can be no doubt but that the effect of the election was to surrender all powers of control over public utilities in so far as they conflict with the powers conferred upon the commission; but appellants contend that it may reasonably be concluded from the language of the act of 1915 that in adopting that portion of the constitutional amendment of 1914 which reads " . . . such powers of control over public utilities as relate to the making and enforcement of local police, sanitary, and other regulations . . . " the people intended to give the words "powers of control" used in the amendment of 1911 the same meaning as that given in said section 2b of the Statute of 1915. As stated, the amendment of 1911 declared the right of the legislature to confer powers upon the commission respecting public utilities to be plenary, and that after the passage of laws conferring such powers "all powers" respecting the same vested in the governing bodies of municipalities should cease in so far as they conflicted with those conferred upon the commission, provided that the section should not affect powers of control over utilities vested in the municipalities which the electors should vote to retain; but if a vote should not favor such retention the same should vest in the commission as provided by law. With this exception neither the amendment of 1911 nor the Hewitt Act referred to the powers to make or enforce local police, sanitary or other regulations by municipalities. The statute of 1915 is not as broad as the constitutional provision. It made no attempt to define the term "powers of control" used in the Constitution, but expressly provided that "as used in this statute" the term should have the meaning therein stated. The term as used in the Hewitt Act and in the Constitution both before and after the amendment is plain and unambiguous, and there is nothing in any of the provisions mentioned, whether constitutional or statutory, which indicates an intention to revest in the municipalities any of the powers which had previously been surrendered to the commission.

■ Constitutions, like statutes, are to be considered prospective and not retrospective in their operation unless a contrary intention clearly appears (5 Cal. Jur., Constitutional Law, sec. 12, p. 561). As is said in Cooley on Constitutional Limitations, "this rule is one of such obvious

convenience and justice that it must always be adhered to in the construction of statutes unless in cases where there is something on the face of the enactment putting it beyond doubt that the legislature meant to operate retrospectively. Retrospective legislation, except when designed to cure formal defects, or otherwise operate remedially, is commonly objectionable in principle and apt to result in injustice, and it is a sound rule of construction which refuses lightly to imply an intent to enact it; and we are aware of no reasons applicable to ordinary legislation which do not on this point apply equally well to constitutions''.

As stated, the trial court found in effect that the plaintiff's traction lines constituted a unified service extending and operating through several cities and counties, and the question whether one-man cars should be operated thereon was not a municipal affair. Whether a surrender of powers previous to the constitutional amendment of 1914 resulted in a relinquishment of all power to make and enforce local police and sanitary measures affecting the health or safety of the general public which might incidentally or indirectly affect the acts of public utilities we need not decide, for while it appears to have been taken for granted in the following cases that an order by the commission within the powers conferred upon it by the Public Utilities Act controls, without regard to the question whether the matter sought to be regulated constituted a municipal affair: *Oro Electric Corp.* v. *Railroad Com.,* 169 Cal. 466 [147 Pac. 118]; *City of Los Angeles* v. *Central Trust Co.,* 173 Cal. 323 [159 Pac. 1169]; *Civic Center Assn.* v. *Railroad Com., supra,* it has been held that where it is a state and not a municipal affair, and the power conferred upon the commission is cognate and germane to the regulation of public utilities, the commission has exclusive jurisdiction (*City of San Bernardino* v. *Railroad Com.,* 190 Cal. 562 [213 Pac. 980]). It has also been held that the term ''municipal affair'' is not a fixed quantity, but fluctuates and changes with conditions (18 Cal. Jur., Municipal Corporations, sec. 96, p. 785; *Hellmer* v. *Superior Court,* 48 Cal. App. 140 [191 Pac. 1001]), and that if a matter is of general concern to the inhabitants of the state outside of such city it is not a municipal affair within the meaning of the Constitution (*Whyte* v. *Sacramento,* 65 Cal.

App. 534 [224 Pac. 1008]; *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754]; *Sloane* v. *Hammond,* 81 Cal. App. 590, 598 [254 Pac. 648]). The state in its sovereign capacity has the original right to the control of public streets and highways; and except in so far as that control is relinquished to municipalities it remains with the legislature (*Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 106 [116 Pac. 557]); and while the regulation of the use of public streets is of special interest to the people of a municipality it does not follow that such regulation is a municipal affair; and if there is a doubt it must be resolved in favor of the legislative authority of the state (*Ex parte Daniels,* 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442]).

In the case last cited it was held that the regulation of traffic upon the streets of a city is not a municipal affair within the meaning of section 6 of article XI of the Constitution; and in *In re Murphy,* 190 Cal. 286 [212 Pac. 30], that the regulation and control of travel and traffic along public roads, streets and highways of the state, if ever it was such, has ceased to be a matter of local concern (*Atlas etc. Co.* v. *City of Burbank,* 202 Cal. 660 [262 Pac. 334]. See, also, *Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 Pac. 118]; *Sincerney* v. *Los Angeles,* 53 Cal. App. 440 [200 Pac. 380]; *Whyte* v. *City of Sacramento, supra*). So the regulation of the manner of constructing crossings of streets and railroads within municipalities has been determined to be a state and not a municipal affair; and the same is true of the operation of railroads extending beyond the municipality (*Civic Center Assn.* v. *Railroad Com., supra; City of San Bernardino* v. *Railroad Com., supra*).

In *City of Los Angeles* v. *Central Trust Co., supra,* at page 327, it was said that "the opening, laying out and improving of streets within a city and the regulation of the manner of their use, are matters of much greater concern to its inhabitants than to the people of the state at large, and they are clearly municipal affairs . . . ", citing *Sinton* v. *Ashbury,* 41 Cal. 531; *People* v. *Holladay,* 93 Cal. 241 [27 Am. St. Rep. 186, 29 Pac. 54]; *Hellman* v. *Shoulters,* 114 Cal. 136 [44 Pac. 915, 45 Pac. 1057]; *Byrne* v. *Drain,* 127 Cal. 663 [60 Pac. 433]. But neither the quoted decision nor the cases cited therein involved the question of the regulation of the use of streets for traffic purposes, and are not in conflict with the other cases hereinabove cited.

█ In the absence of any affirmative action by the legislature, or by the commission acting in the exercise of a power to supervise or regulate public utilities, a municipality may of course adopt regulations respecting the manner of operating' vehicles upon public streets; but where the field is occupied by the legislature, or by the commission acting within its powers, a municipality may not enact regulations which conflict therewith (*Ex parte Daniels, supra; In re Murphy, supra; Atlas etc. Co.* v. *City of Burbank, supra; Switzler* v. *Atchison, T. & S. F. Ry. Co.,* 104 Cal. App. 138 [285 Pac. 918]). Here the line over which the one-man street-car was operated is wholly within the City of Oakland; but this fact is not decisive, as regulations respecting the number of men to be employed in the operation of such cars as well as those governing the speed, or prescribing other precautions to avoid accidents, are essentially regulations controlling travel and traffic on public streets; and, in accordance with the rulings in the above cases, are not matters of purely local concern. Furthermore, the power to so regulate is manifestly "cognate and germane to the regulation and control of public utilities" (*East Bay etc. Dist.* v. *Railroad Com.,* 194 Cal. 603 [229 Pac. 949, 953]).

The further claim was made by plaintiff that the ordinance is unconstitutional in that it deprives the company of its property and the use thereof in violation of the fourteenth amendment of the federal Constitution; and this contention finds support in the recent case of *Shreveport Rys. Corp* v. *City of Shreveport,* 37 Fed. (2d) 910; 38 Fed. (2d) 945; 281 U. S. 763 [74 L. Ed. 1172, 50 Sup. Ct. Rep. 462], involving facts similar to those in the case at bar. This ground of complaint, however, was not passed upon by the trial court; and, we being satisfied for the other reasons stated that the ordinance is void as against plaintiff, it will be unnecessary to consider this question.

The judgment is affirmed.