[L. A. No. 17460. In Bank.—December 23, 1940.]

LOS ANGELES RAILWAY CORPORATION (a Corporation), Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, and Frederick von Schrader, Assistant City Attorney, for Appellants.

Gibson, Dunn & Crutcher and H. F. Prince for Respondent.

THE COURT.—The City of Los Angeles adopted an initiative ordinance requiring crews of at least two persons on all street cars in the City of Los Angeles. The Los Angeles Railway Corporation, pursuant to an order of the Railroad Commission granting it permission so to do, had theretofore purchased new specified equipment and converted and standardized its existing equipment for the operation of one-man street cars, and had been so operating them. It filed an action against the city by which it sought to have the ordinance declared unconstitutional and void and the officers of the defendant enjoined from attempting to enforce it. The cause was submitted upon a written stipulation of facts. The court found for the plaintiff and entered its judgment granting the relief sought. The defendant appealed from the judgment.

It appears from the stipulated facts that for many years, under the jurisdiction of the Railroad Commission, the plaintiff had been and is operating a unified public utility street railway and motor coach transportation system rendering service for the transportation of passengers in and between the cities of Los Angeles, Inglewood, Hawthorne, Huntington Park, Vernon, Maywood, South Gate, Culver City and Bell, and in certain unincorporated areas of the county of Los Angeles. The service is rendered by means of twenty-five street railway lines, seventeen of which are operated within the City of Los Angeles and the remaining eight in the City of Los Angeles and in the outlying incorporated and unincorporated areas. Six shuttle lines also serve the outlying unincorporated and various incorporated areas. A transfer system is in effect which provides for exchange of passengers between the plaintiff's railway system and a coach system in which it owns a one-half interest, and between the plaintiff's lines and the Pacific Electric Railway Company's interurban transportation system.

The City of Los Angeles is the center of the metropolitan area. In the year 1938 the plaintiff's railway lines transported within and without the city nearly 254,000,000 passengers.

In 1934 the city complained to the Railroad Commission of the obsolescent character of the Railway Company's equipment. The commission suggested that the parties reach an agreement. Thereupon, with the approval of the commission, an agreement was executed by which the company entered into a program of equipment renewal, modernization and conversion of existing equipment into one man-two man safety cars. The agreement specified that the program of expenditure was predicated on the gradual introduction of one-man operation without displacing present employees. The agreement was approved by the City Council in February, 1935. In April, 1935, the city initiated an investigation by the Railroad Commission into all phases of the operation of the plaintiff, but especially the question of one-man operation of street cars. As a result of that investigation and study the commission found that that form of economy in operation had been successfully placed in effect on the majority of street car systems in the United States; that as a general proposition one-man operation of street cars is sound, if proper equipment is available; that the new equipment program of the Los Angeles Railway Corporation was predicated on one-man operation and in its opinion such one-man operation was entirely practicable with such equipment.

In December, 1935, pursuant to instructions from the City Council the Board of Public Utilities and Transportation of the City of Los Angeles instituted an independent investigation into the matter of one-man operation of street cars in the city. On November 14, 1936, as a result of that investigation and after hearings, the board published a resolution and order adopting regulations to promote the safety and convenience of public utility companies operating street cars in the City of Los Angeles. The regulation required that every street car be operated by a crew of not less than two men except that approval of the board might be obtained for one-man operation upon compliance with certain conditions as to equipment, route, hours of operation and adequacy of service.

Pursuant to the agreement with the city and the conditions of the foregoing order of the board, the plaintiff has expended or incurred obligations to the extent of more than $1,600,000 for new one-man street cars which are now in service in the City of Los Angeles and surrounding cities and unincorporated areas served by it. In addition it has

expended nearly $1,000,000 in reconstruction, remodeling and modernization of existing equipment which is now in operation under one-man crews, and it has expended other sums in the program set up by the agreement.

Upon application of the Railway Company to, and after public hearing by, the Railroad Commission, the latter issued its order on March 27, 1939, permitting one-man operation of its street cars over certain lines of its system within and without the city. It is conceded that the one-man cars are equipped with all the devices, appliances and fixtures which are required by the above-mentioned order of the Board of Public Utilities and Transportation, and that the operation of one-man cars has been put into effect without the laying off or discharging of any employees of the plaintiff. It is also conceded that the lines of such operation are located upon streets and highways, some of which are established as primary and others as secondary state highways.

On May 2, 1939, the electors of the city adopted the initiative ordinance hereinabove referred to, which required operation of each street car over the lines of the plaintiff in the City of Los Angeles by two men, designated as a motorman and a conductor, and providing punishment for the violation of the ordinance by fine or imprisonment or both.

It was also stipulated that competent credible expert witnesses for the plaintiff would testify that the type of street cars operated by the plaintiff and designed for one-man operation could be operated more safely by one man than by two men, and that the one-man operation of said street cars as authorized by the Railroad Commission is more expeditious and affords greater convenience to the public than the operation by two men as required by the ordinance; and that equally competent and credible expert witnesses for the defendant would testify to the contrary, namely, that operation by two men was safer, more expeditious and convenient than operation by one man.

The court found that the matters which were the subject of the ordinance requiring two-man operation and of the Railroad Commission's order permitting one-man operation were not matters solely of local or municipal concern to the City of Los Angeles, but were of general public concern, and that the Railroad Commission had the paramount jurisdiction over the operation of the plaintiff's railway system,

including the equipment of its street cars and its operating personnel requirements.

The case presents a conflict between an ordinance of the City of Los Angeles and an order of the Railroad Commission. The question is as to which is controlling. The conflict may be resolved by a consideration of the question whether the trial court correctly concluded on the stipulated facts that the operation of the street cars of the plaintiff over the territory designated by one man or two men was a question of general interest and not a matter of strictly local concern and, therefore, not a municipal affair. The stipulated facts considered in the light of recent decisions in this state leaves little room for debate.

It is not necessary to review the history of the chartered organization of the City of Los Angeles in connection with the various amendments of section 8, article XI, or section 23, article XII, of the Constitution. ■ The Constitution grants to chartered municipal corporations complete autonomy in respect to municipal affairs. ■■ But the question here is disposed of by our conclusion that the facts disclose that the one-man or two-man operation of cars over the plaintiff's railway system is not a matter exclusively of municipal concern and is, therefore, not a municipal affair within the meaning of said sections of the Constitution; and that the question of such operation does not relate merely to the power to make and enforce local, police, sanitary or other regulations covering the plaintiff which it may be assumed has vested in the City of Los Angeles, pursuant to the provisions of said section 23; or, if it may be said to be a police regulation, that it relates to a matter which is not strictly a local affair and, therefore, has not been included in the reserved power. ■ It, therefore, becomes unnecessary to discuss the evidence as to the comparative safety of one-man or two-man operation of street cars in the City of Los Angeles. If the matter is one which is under the exclusive control and supervision of the Railroad Commission, the commission's decision in that respect is binding and conclusive in this proceeding.

The line of decisions in this state which supports a conclusion in favor of the plaintiff begins with the case of *Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351]. In that case this court granted an application for a writ of mandate directed to the Railroad Commission to entertain

jurisdiction of complaints filed with it by several railroads relating to the contemplated abolition of grade crossings in the City of Los Angeles and the establishment of a union depot within the city. This court had theretofore in the case of *City of Los Angeles* v. *Central Trust Co.,* 173 Cal. 323 [159 Pac. 1169], upheld the right of the City of Los Angeles to condemn a strip of land owned by the Southern Pacific Company used as part of its right of way, for the purpose of opening and improving Arlington Street in said city. The latter decision was based on the recognition that ''the opening, laying out, and improvement of streets within a city, and the regulation of the manner of their use are matters of much greater concern to its inhabitants than to the people of the state at large, and they are clearly municipal affairs, the control of which has always been deemed within the proper scope of municipal powers'' (citing cases). The concurring opinion in that case pointed out that in the case of a railroad utility whose operations are not strictly confined within the boundaries of a city, the welfare of all concerned would be best conserved by placing the entire control under the jurisdiction of the Railroad Commission, which would be empowered to adjust all questions arising in the light of all interests entitled to consideration. In the Civic Center case this court, while it recognized the paramount authority of the city in respect to the laying out, opening and improving of its streets, concluded that the establishment of a viaduct or subway at railroad crossings in a city might be a matter of more than merely municipal concern. It held in that case that the establishment of the improvements sought to be made were matters of general state concern, were not properly municipal affairs, and were to be controlled and regulated within as well as without the particular municipality by general state authority. It was said in that case: ''As such railroads serve the people of the entire state as a means of communication and transportation, it is apparent that it would not be to the interest of the state to leave them subject to the exclusive and unlimited control of every city through which they pass, with respect to the construction, maintenance, and operation of the lines lying within such city . . . ''. It was concluded that the legislative declarations embodied in the Public Utilities Act, adopted pursuant to article XII of the Constitution, were therefore paramount

to the provisions of the city charter. It was also contended in that case that the power to regulate was nevertheless vested in the city pursuant to the provisions of section 23 of article XII, by which it retained power of local police regulation over public utilities except rate fixing. The court noted that under the law then in force police regulation of affairs not municipal in character were subject to and controlled by general laws. It distinguished the law in force at the time the case of *City of Los Angeles* v. *Central Trust Co.* was decided, pointing out that in the latter case there was involved only the power of the city to open streets, and not the power of the Railroad Commission under the Public Utilities Act to regulate or compel a change in the mode of crossings at intersections with railroad rights of way. The holding of the Civic Center case was applied to somewhat similar facts in *City of San Bernardino* v. *Railroad Com.*, 190 Cal. 562 [213 Pac. 980]. (See, also, *Atchison, Topeka & Santa Fe Ry. Co.* v. *Railroad Com.*, 209 Cal. 460 [288 Pac. 775]; *City of San Mateo* v. *Railroad Com.*, 9 Cal. (2d) 1 [68 Pac. (2d) 713].)

Subsequent to the decision in the Civic Center case, and in *Ex parte Daniels*, 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172], this court held that by the adoption of the Motor Vehicle Act in 1917 the regulation of speed of motor vehicles in chartered cities had ceased to be a strictly municipal affair. It was said: "While it is true that the regulation of traffic upon a public street is of special interest to the people of a municipality, it does not follow that such regulation is a municipal affair, and if there is a doubt as to whether or not such regulation is a municipal affair, that doubt must be resolved in favor of the legislative authority of the state." (See, also, *In re Murphy*, 190 Cal. 286 [212 Pac. 30]; *Atlas Mixed Mortar Co.* v. *City of Burbank*, 202 Cal. 660 [262 Pac. 334]; *Morel* v. *Railroad Com.*, 11 Cal. (2d) 488 [81 Pac. (2d) 144]; *Sincerney* v. *City of Los Angeles*, 53 Cal. App. 440 [200 Pac. 380].)

In *Gadd* v. *McGuire*, 69 Cal. App. 347 [231 Pac. 754], a writ of *mandamus* was issued directing the Board of Public Works of the City of Los Angeles to proceed under a contract executed pursuant to the City Boundary Line Act (Stats. 1911, p. 1018, as amended Stats. 1923, p. 633), looking to the improvement of streets extending partly in the city and

partly in other cities or contiguous unincorporated territory, or both. The court refused to hold that the subject of the contract was a municipal affair over which the City of Los Angeles had exclusive control unaffected by the provisions of the act. The conclusion in that case was followed in *County of Los Angeles* v. *Hunt*, 198 Cal. 753, 774 [247 Pac. 897], wherein the scope of the proposed public improvement covered territory both within and without the City of Los Angeles and contemplated proceedings pursuant to the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849).

In *Key System Transit Co.* v. *City of Oakland*, 124 Cal. App. 733 [13 Pac. (2d) 979], the trial court had rendered judgment enjoining the enforcement of an ordinance which required the operation of street cars by two men. In February, 1914, and prior to the 1914 amendment of section 23, article XII, of the Constitution, the city had voted not to retain control of public utilities. The plaintiff operated street railway lines within the city and elsewhere in the counties of Alameda and Contra Costa. It applied to the Railroad Commission for and was granted permission to continue operation of one-man cars on certain lines. A prosecution had been instituted against the plaintiff and one of its employees charging a violation of the ordinance by the operation of a one-man street car on the Twenty-third Avenue line, which was wholly within the city. On the appeal it was held that the subject of regulation was not a municipal affair. Among other cases, it relied on the decisions hereinabove cited. It said: "Here the line over which the one-man street car was operated is wholly within the City of Oakland; but this fact is not decisive, as regulations respecting the number of men to be employed in the operation of such cars as well as those governing the speed, or prescribing other precautions to avoid accidents, are essentially regulations controlling travel and traffic on public streets; and in accordance with the rulings in the above cases, are not matters of purely local concern. Furthermore, the power to so regulate is manifestly 'cognate and germane to the regulation and control of public utilities' ", citing *East Bay etc. Dist.* v. *Railroad Com.*, 194 Cal. 603 [229 Pac. 949]. (See, also, *Connecticut Co.* v. *City of New Haven*, 103 Conn. 197 [130 Atl. 169].) In the last cited case it was said: "The one man car ordinance is not the regulation of an exclusively local condition. This is plain

in the case of a railway operating . . . over a wide area and through many communities . . . Regulations of great businesses affected with a public interest touching every institution, every activity, every home and every person in the state must be uniform, and must be free from the local judgment and prejudice. Then too, many of these utilities reached into other communities, and uniformity of regulation by all these communities would be an unlooked for result. . . . None of these great interests would be served if each community retained the power of making such police regulations as each might deem proper. . . . Neither the public nor the service corporation could tolerate as many standards and policies as there were towns, cities, or boroughs through which they operated. . . . Over certain matters of public power, wholly local, the state has left with the municipality either original or concurrent jurisdiction. Over regulations not exclusively local, those affecting the business as a whole, or affecting the public as a whole, and those which the nature of the business and the character of the regulation require should be under the single agency of the state, are by our act committed to the exclusive jurisdiction of the Public Utilities Commission. The subject matter of this ordinance clearly falls within the exclusive jurisdiction of the commission.''

A consideration of the stipulated facts, in the light of the foregoing decisions, leads to the conclusion that the trial court correctly found that the regulation and operation of the street cars of the plaintiff over the territory involved is not a matter solely of local concern and is not, therefore, a municipal affair. Whether the operation of the cars should be by a crew of one man or two men is a question which is of concern to all the patrons of the system, those who reside outside as well as those who reside within the City of Los Angeles. The stipulated facts indicate that the questions of economy of operation, greater efficiency in the service, both from the standpoints of quality and frequency, the cost of equipment, and other related matters may be and undoubtedly are directly affected by the mode of operation, whether by crews of one man or two men, and consequently affect the benefits to be derived by the public from the service.

The regulation is clearly within the power vested in the Railroad Commission by the Constitution and the Public Utilities Act. The trial court, therefore, correctly concluded

that the order and regulation of the Railroad Commission, duly adopted pursuant to such power, acquired the force of law (*Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652]; *Morris* v. *Sierra etc. Power Co.,* 57 Cal. App. 281 [207 Pac. 262]), and that the provisions of the ordinance, being in conflict with the order of the commission, were ineffective.

The judgment is affirmed.

Mr. Justice Houser did not participate in the foregoing decision.