[Civ. No. 7226. Third Dist. Apr. 22, 1946.]

T. H. WHITTEMORE et al., Petitioners, v. F. W. SEYDEL et al., Respondents.

Peters & Peters, L. S. Hamm and Mull & Pierce for Petitioners.

Grayson Price for Respondents.

ADAMS, P. J.—Petitioners herein sought a referendum against Ordinance No. 349 adopted and published by the council of the city of Chico on June 29, 1945. The ordinance was one fixing a license tax upon admissions to places of amusement within the city. Chico is a charter city, the charter having been approved by the Legislature in 1923, and section 116 of the charter provides that the laws of the State of California providing for the initiative referendum and recall *in cities* are made a part thereof and that all actions thereunder shall be taken in accordance with said laws.

Within thirty days after the adoption of this ordinance, to wit, on or about the 25th day of July, 1945, there was filed with the city clerk a referendum petition consisting of several parts, protesting the ordinance and requesting its repeal by the council or its submission to a municipal election for approval or rejection. Each portion of the petition referred to the ordinance as an "ordinance of the City of Chico, County of Butte, State of California, entitled 'An Ordinance Amending Chapter X of the Municipal Code of the City of Chico, by Adding Thereto a New Article and Sections Providing for the Licensing and Carrying on of Certain Businesses, Trades, Callings and Occupations in the City of Chico, California, for the Purpose of Raising Municipal Revenue and Providing for Penalties for Violations Thereof,' adopted by said City Council on June 29, 1945, being Ordinance No. 349 of the Said City of Chico, . . ."

Each signer of the petitions stated after his name the date of his signing, and the circulator of each portion of the petition affixed thereto his affidavit which recited that he was a voter of the city, that he personally circulated the petition attached thereto and that he personally saw written the signatures appended thereto, and that according to his best information and belief each signature was the genuine signature of the person whose name it purported to be, and that each of the signers was a voter of the city of Chico, county of Butte, State of California. The city clerk attached to the petition a certificate in which he averred that the petition to which his affidavit was attached was filed in his office on July 25th, and

consisted of 46 sections all of which were filed at the same time; that each section contained signatures and dates purporting to be, respectively, the signatures of qualified electors of the city, and the dates upon which such electors had respectively signed said petition. He further certified that after said petition was filed he had examined the affidavits of registration in Butte County and the records relating thereto, current and in effect at the respective purported dates of such signing, to determine therefrom what number of qualified electors signed said petition and respectively affixed thereto the purported dates of their signing; and that from said examination he had determined that said petition was "and is" signed by 579 qualified electors of said city, each of whom had affixed to said petition a date purported to be the date when such elector had signed the petition, and each of whom was a registered qualified elector of said county on said date.

The petitions and the certificate of the city clerk were duly presented to the city council which, on or about August 7th, refused to act thereon on the sole ground that the affidavits of the circulators did not set forth the dates between which the signatures upon the petitions were obtained by them.

On October 1, 1945, petitioners herein delivered to the city clerk amended affidavits of the several circulators of the several parts of the referendum petition, requesting the clerk to file said affidavits and attach them to the respective pages of the petition, but the city clerk refused to accept same.

Thereafter, petitioners filed in this court their petition for a writ of mandate to compel the city council to repeal the ordinance or submit same to the voters. The petition alleged, among other things, the adoption of the ordinance, the filing of the petitions for referendum signed by the requisite number of qualified voters, and that each signer had set forth after his name the date of his signing. We issued an alternative writ of mandate in response to which respondents filed a demurrer to the petition, together with an answer thereto. The answer admitted the significant allegations of the petition but alleged by way of defense that "the purported referendum petition, including all of the several parts thereof, referred to in petitioners' application for Writ of Mandate were at the time of the filing of the same with respondent City of Chico, and for more than thirty days after the adoption of the ordinance complained of, defective and invalid in that none of the affidavits of the purported circulators of the several parts of said petition set forth the dates between which the

signatures upon said respective parts thereof were obtained by the several circulators as required by Section 45 of the Elections Code of the State of California. That by reason thereof the respondent City Council of the City of Chico was without jurisdiction to call an election as therein demanded.''

The sufficiency of the referendum petitions themselves is not attacked, but, as aforesaid, the contention of the council is that the city was without jurisdiction to act upon the referendum petitions solely because of the failure of the circulators thereof to allege in their affidavits the dates between which all signatures were secured by them. It is not denied that the said signatures were all secured within the time provided by statute, and it is apparent upon the face of the petitions themselves that such signatures were so secured.

Section 45 of the Elections Code, which section is found among the general provisions thereof, between 1943 and 1945, and at the time of the proceedings herein involved, provided:

''Wherever, by the Constitution or laws of this State any ... referendum ... ,petition or paper ... is required to be signed by voters, only a voter who is a registered qualified voter at the time he signs the petition or paper, is entitled to sign it. Each signer shall at the time of signing the petition . . . himself affix thereto his place of residence, giving street and number, and if no street or number exists, then a designation of his place of residence which will enable the location to be readily ascertained; provided, however, that each signer of any municipal ... referendum ... petition ... shall in addition to the other requirements of this section, at the time of signing the petition or paper affix thereto the date of his signing. . . . The date of signing shall appear opposite each name, but if successive signers sign on the same date, marks may be used to indicate that the dates are the same.

''Wherever, by the Constitution or laws of this State, any such petition or paper is required to be accompanied by the affidavit of the person soliciting signatures thereto, that affidavit shall set forth the dates between which all signatures on the petition or paper were secured by him.''

This section was amended in 1945, at which time the last paragraph was dropped from it and the word ''municipal'' in the preceding paragraph was deleted.

During the significant period here, division IV, chapter 3, of the Elections Code providing for ''Municipal Elections'' provided (§ 1770) that no ordinance enacted by an incor-

porated city pursuant to this chapter should become effective until thirty days from and after the date of its passage, with an exception not pertinent here; that (§ 1771) if a petition signed by not less than 10 per cent of the voters of the city, protesting against the adoption of an ordinance were presented to the legislative body of the city within thirty days of its adoption, the effective date of the ordinance should be suspended, and the legislative body should reconsider the same and that in order to be acceptable for filing the petition must on its face purport to have appended to it signatures of voters in the required number; that (§ 1772) if the legislative body did not entirely repeal the ordinance against which the petition was filed, it should submit the same to the voters, either at a regular municipal election or a special election to be called for the purpose; that (§ 1773) the provisions of this chapter relating to the form of petitions, the duties of the city clerk, and the manner of holding elections when an ordinance was proposed by initiative petition, should govern the procedure when a protest was filed against an ordinance.

Sections 1708 to 1723 pertaining to initiative petitions are thus made applicable to referendum petitions. Section 1708 provided that each separate paper of a petition should have attached an affidavit made by a voter of the city, which affidavit should state that the affiant circulated that particular paper and saw written the signatures appended thereto, and that according to the best information and belief of affiant each was the genuine signature of the person whose name it purported to be, and that the signer was a voter of the city. It is to be noted that this section, though enacted in 1939, did not require that such affidavit set forth the dates between which signatures on the petition were secured by the circulator thereof. Section 1709 of the said code provided that within ten days from the date of filing the petition the clerk of the legislative body should examine it, and from the records of registration ascertain whether or not it was signed by the requisite number of voters, and that he should attach to the petition his certificate showing the result of his examination.

Petitioners' contentions are that the last paragraph of section 45 of the Elections Code, as it existed from 1943 until its repeal in 1945, was not applicable to a municipal referendum petition; that the requirement of that paragraph was in violation of article IV, section 1, of the state Constitution; that it was not necessary that section 45 be strictly complied with as

the requirement of same was merely directory; that the provisions of section 45 were substantially complied with; that the duty of passing upon and determining the sufficiency of the petition was vested by law in the clerk and not in the council, and the latter had no power to redetermine the question of the sufficiency of the petition after the clerk had certified to such sufficiency; and, finally, that the subsequent amendment of the affidavits by the circulators cured any defect there might have been therein.

Assuming for the moment, without deciding, that the provisions of section 45 were applicable to initiative and referendum petitions in incorporated cities, and that the circulators of such petitions were required, at the time of the filing of the petitions herein involved, to allege in their affidavits thereto the dates between which the signatures were secured by them, the question arises whether the failure to so allege is fatal to the referendum. The Constitution itself provides in article IV, section 1, that the section is self-executing; and that while legislation may be enacted to facilitate its operation, it may not be enacted to limit or restrict in any way, the provisions of the section or the powers therein reserved. And our courts have frequently stated that the power of referendum is one reserved to the people, and that in order to protect the people in the exercise of this power statutory and charter provisions dealing with such powers are always to be liberally construed in favor of the power. (*Ley* v. *Dominguez,* 212 Cal. 587, 593 [299 P. 713]; *Chester* v. *Hall,* 55 Cal.App. 611, 617 [204 P. 237]; *Osborn* v. *Board of Supervisors,* 27 Cal.App. 85, 89 [148 P. 970].)

The only purpose which the requirement that the affidavits state the dates between which the signatures to the petitions were obtained could serve would be to furnish evidence from which it could be determined that subscribers signed during the thirty-day period following the effective date of the ordinance. However, as each individual signer was required to and did set forth the date of his signing (which requirement has been said to be for the purpose of facilitating the work of the clerk in determining the one essential thing to make a referendum effective—that the petition be signed by the requisite number of qualified voters), the additional averment in the affidavit would appear to furnish nothing that was not already shown. Such affidavits are not a part of the petitions themselves, but only an accompaniment to them, and it is

hardly reasonable to say that the failure of the affidavit to aver something which was required to be and was set forth in the petition itself, should have the effect of invalidating a petition which it is not denied was signed by the requisite number of qualified electors who had themselves complied with all statutory requirements to make their petition effective. To construe the provision of section 45 regarding the affidavit so as to render the whole proceeding void, as respondent contends it should be construed, would be not only illiberal, but would be a case of the tail's wagging the dog. Here the petition and the affidavits furnished evidence sufficient to satisfy the city clerk of these matters, and he certified to the council that he had determined that the requisite number of qualified electors had signed. Under such circumstances the wishes of said electors should not be defeated by omissions of the affidavits to state matters which, if stated, would obviously only serve to confirm that which was already apparent.

In the instant case, as above stated, the petitions referred to the ordinance by title and number and stated the date of its enactment. It is apparent therefrom that the signatures were not and could not have been secured prior to that date. Furthermore, the signers themselves affixed the dates of signing, all of which were within the statutory period; the affidavits were filed within the thirty days; and there is also the presumption that the ordinary course had been followed. And finally it is not contended by respondent that the petitions were not signed within the statutory period by the requisite number of qualified electors; those facts are conceded. Under those circumstances we are satisfied that the petitions were adequate to require the city council to proceed in accordance therewith.

In *Chester* v. *Hall, supra,* it was admitted that the requisite number of qualified electors had signed an initiative petition, but the clerk contended, in a mandamus proceeding, that the dates of signing had not been affixed by some of the signers but by some other person and were false, and that the petition was, therefore, void. The court said that the petition was apparently sufficient to enable the clerk to satisfy himself that the petitioners were qualified electors at the time they signed, and that as for those signers who did not affix the dates of their signing, it might logically be inferred that any such signature was made within the dates of signatures immediately preceding and following them; that it was possible that sec-

tions of the petition might have been prepared and signed at times other than the dates affixed, but that no attempt had been made to prove that such was the case. And it added that courts cannot base their decisions upon speculations contrary to the presumption that the ordinary course has been followed; that the manifest purpose of the law requiring the signers to affix their date of signing is to guard against signatures of persons who are not qualified electors; but that the pleadings admitted the signing by a sufficient number of qualified electors and that, under the circumstances, to hold the petition insufficient would be to follow the letter of the law in disregard of the spirit.

In *Carter* v. *Green*, 97 Cal.App. 564 [276 P. 120], the court held that where the officer whose duty it was to determine the sufficiency of the petition had found the same to be signed by the requisite number of qualified electors, the fact that the dates of signing were not affixed by them but by another would not render void the proceedings based thereon, though at that time section 1083a of the Political Code required signers to affix the dates of signing. In that case the clerk did not certify to the board that the petition was signed by the requisite number of qualified electors; but in the case before us he did. The court said that the purpose of the requirement that signers give dates was to guard against signatures by persons who are not qualified electors at the time of signing. Also it said that where prerequisite facts exist and are established by sufficient proof, the duty of the board to call an election is mandatory and may be compelled. Here the fact is conceded—at least not denied—that a sufficient number of qualified electors signed.

As hereinbefore stated, the portion of section 45 of the Elections Code requiring the affidavit of the solicitor to set forth the dates between which all signatures were secured by him, was added in 1943 and eliminated in 1945—which indicates that in the opinion of the Legislature the inclusion of such matter in the affidavit was superfluous in view of the requirement that each signer himself affix the date of his signing. It must therefore be assumed that the Legislature did not intend or consider that the omission of such matter from the affidavit should or would render otherwise valid petitions invalid, and thus defeat the right of referendum, which, after all, was the right of the people who signed said petition, and in whose favor, rather than that of the city council, doubts should be resolved under the constitutional provision.

Furthermore, while the Constitution, article IV, section 1, provides that each section of a petition shall have attached thereto the affidavit of the person soliciting signatures to the same, it further provides that in such affidavit there shall be stated the qualifications of the solicitor and that the signatures were made in his presence and that to the best of his knowledge and belief each signature is the genuine signature of the person whose name it purports to be, and that *"no other affidavit thereto shall be required."* (Italics added.) The affidavits in the instant case contained all the matter required by this section, which is all that is required by section 1708 of the Elections Code; and even assuming that the Legislature intended section 45 to apply to municipal referendums, the additional matter therein required to be stated in the affidavit was in excess of that required by the Constitution, and violated the foregoing restriction. Doubtless for that reason said provision was repealed in 1945.

Respondents cite *Wright* v. *Engram,* 186 Cal. 659 [201 P. 788], and *Conn* v. *City Council,* 17 Cal.App. 705 [121 P. 714], but we find nothing in those cases in conflict with the contentions of petitioners herein. All that the former case held was that the acts of the city clerk in determining the sufficiency of a recall petition were not judicial and that they were, therefore, not reviewable by writ of certiorari. In the Conn case a writ of mandamus was sought to compel the city council of Richmond to fix a date for a recall election, the petition for the writ alleging that the petitions for the recall were sufficient and had been so certified to the council. It was urged by respondent that some of the signers of the petitions had not signed their names in full, but had given only their initials, and that others had failed to add their places of residence giving street and number, and that they had thus failed to conform to requirements of the city charter, and for these reasons the petitions were insufficient on their faces to confer jurisdiction upon either the clerk or the council. But the court said that the petitions upon their faces in form and substance conformed to the spirit and letter of the city charter, and as there was no controversy before the council or elsewhere as to the sufficiency of the *petitions* the duty of the council was ministerial; and the clerk having submitted proper petitions together with his certificate as to their sufficiency it became the plain duty of the council to fix a date for the election. It is true that in the Conn case the Supreme Court, in denying a hearing, said that certain language of the opinion of the

district court of appeal to the effect that the certificate of the clerk that the signatures to the petitions were genuine and sufficient to require the recall election was conclusive and controlling was not approved; that it did not appear that there was any evidence offered to impeach the accuracy of the clerk's certificate and the statement was not necessary to the decision; that signatures might be forged yet the petitions be supported by false affidavits or by a false certificate, in which cases the clerk's certificate would not be said to be conclusive. We do not find anything in that decision adverse to the position of petitioners herein.

Regarding the contention of petitioners that section 45 of the Elections Code is not applicable to municipal referendums and was not intended to be so applicable, it finds strong support in the statutes themselves. Division 4, chapter 2, of the Elections Code is entitled ''County and Township Elections,'' and provides rules for the initiative and referendum in counties. Division 4, chapter 3, is entitled ''Municipal Elections,'' and provides for the initiative and referendum in incorporated cities. The section thereof providing what the affidavits of solicitors for signatures to petitions in cities shall contain (§ 1708) was codified in 1939 and was based upon an act of 1911 (amended in 1915, ch. 155, § 1; Deering's Gen. Laws, 1937, Act 3651) entitled ''An act to provide for direct legislation by cities and towns, including initiative and referendum.'' The provision of the later measure regarding the affidavit to be attached to a referendum petition was the same as in the former. It is also identical with the requirement of section 1601 pertaining to counties. And it is significant that neither of these sections was changed in 1943 when section 45 was amended. This justifies an inference that it was always the intention of the Legislature that the special provisions of division 4, chapters 2 and 3, and not the general provisions of section 45, should apply to counties and cities. A like inference may be drawn from the fact that article IV, section 1, of the Constitution in a separate paragraph provides that ''The initiative and referendum powers of the people are hereby further reserved to the electors of each county, ... city ... of the State to be exercised under such procedure as may be provided by law''; also from the provision in section 1723 that ''This article does not apply to any state-wide initiative measure,'' which was enacted in 1939 (based upon

former Pol. Code, § 1083d, second sentence, as added by Stats. 1937, ch. 719, § 1, p. 2003).

And the rule that specific provisions relating to a particular branch of a subject must govern that branch as against general provisions in other parts of a statute, is applicable here. (See *Turner* v. *Wilson*, 171 Cal. 600, 606 [154 P. 2] ; *Harrigan* v. *Home Life Ins. Co.*, 128 Cal. 531, 537, 538 [58 P. 180, 61 P. 99] ; *Healy* v. *Superior Court*, 127 Cal. 659, 662 [60 P. 428] ; *King* v. *Armstrong*, 9 Cal.App. 368, 371 [99 P. 527] ; *Frandzen* v. *County of San Diego*, 101 Cal. 317, 321 [35 P. 897] ; *Brill* v. *County of Los Angeles*, 16 Cal.2d 726, 732 [108 P.2d 443] ; *Key System Transit Co.* v. *City of Oakland*, 124 Cal.App. 733, 738 [13 P.2d 979].)

In view of our conclusion that the petitions were sufficient and that the council should have repealed the ordinance or submitted same to the voters as provided by law, it is unnecessary to determine whether the circulators thereof should have been permitted to amend their affidavits to include the allegations the omission of which the council held was fatal to the petition. But it may be said in passing, that such contentions find support in *Hinkley* v. *Wells*, 57 Cal.App. 206, 207 [206 P. 1023].

It is ordered that a writ of mandate issue as prayed.

Peek, J., and Thompson, J., concurred.